**Ex parte Anthony Charles GRAVES, Applicant.**

No. 73,927.

Court of Criminal Appeals of Texas.

Jan. 2, 2002.

Rehearing Denied March 6, 2002.

Roy E. Greenwood, Austin, for appellant.

Charles M. Mallin, Assist. DA, Fort Worth, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, WOMACK, KEASLER, and HERVEY, J.J., joined.

In his third post-conviction death penalty writ, applicant asks us to consider the following issue: does an allegation in a subsequent writ application that prior habeas corpus counsel was not "competent" under article 11.071, section 2(a) of the Texas Code of Criminal Procedure:[1] 1) give rise to a cognizable habeas corpus

---

1. Unless otherwise noted, "article" refers to the Texas Code of Criminal Procedure (Ver- non Supp.2000).

claim; *and* 2) fulfill the requirements under article 11.071, section 5 for having this Court consider the merits of a subsequent writ? Because we find that competency of prior habeas counsel is not a cognizable issue on habeas corpus review, applicant's allegation cannot fulfill the requirements of article 11.071 section 5 for a subsequent writ. Therefore, we dismiss applicant's writ under article 11.071 section 5(c) as an abuse of the writ.

## I.

A Burleson County, Texas grand jury indicted applicant in May 1994 for intentionally and knowingly causing the stabbing and shooting deaths of one adult and five children. The evidence at trial showed that in the early morning hours of August 18, 1992, applicant and an accomplice, Robert Carter, killed all six victims in a home belonging to the adult victim. Applicant's motive was anger at the female homeowner for receiving a job promotion he thought his mother should have received. The five slain children just happened to be in the house at the time. After stabbing and shooting the victims, applicant and Carter used gasoline to burn the house. When police officers first questioned the accomplice, he implicated himself and applicant in the murders and arson. Both applicant and Carter later testified before the grand jury and denied any involvement. While applicant and

Carter were both in county jail awaiting trial, however, several witnesses overheard them make incriminating statements to each other.[2]

The State tried Robert Carter first. A jury convicted Carter of capital murder and sentenced him to death. He then testified against applicant at applicant's trial in exchange for the State's promise not to prosecute Carter's wife, who had also been indicted for this capital murder.[3] Applicant presented an alibi defense, offering evidence that he had spent the evening of the murders with his girlfriend, Yolanda Mathis. He claimed that the accomplice "framed" him.

After a twelve day trial, the jury convicted applicant of capital murder. The jury answered 'yes' to article 37.071[4] special issues 1 and 2 and 'no' to special issue 3. Accordingly, on November 3, 1994, the trial court assessed the death penalty against applicant.

Applicant filed a motion for new trial and an amended motion for new trial, raising twenty-six separate grounds. The trial court heard applicant's original and amended motions for new trial on January 13, 1995, and denied both in an order dated January 24, 1995. Applicant appealed directly to this Court and raised thirty-six points of error, complaining of legal sufficiency, the accomplice witness testimo-

---

2. Applicant and Carter occupied cells directly opposite one another and conversed across this distance. While delivering food to the jail, a Burleson County Jail employee overheard applicant say to Carter, "[w]e fucked up big time." Another employee heard applicant tell Carter, "[k]eep your damn mouth shut. I done the job for you. Make them make their own damn case." That same evening, a jailer overheard applicant tell his accomplice, "[y]eah, motherfucker, I did it, keep your mouth shut!"

3. Shortly before his own execution, the accomplice, Robert Earl Carter, was deposed in prison and recanted his trial testimony. Carter claimed that applicant had nothing to do with the murders; that he, Carter, committed the murders alone; and that he had never known applicant to carry a knife. Several witnesses at applicant's trial had testified, however, that applicant owned a switchblade knife that matched "like a glove" the wounds that caused the death of five of the six victims.

4. *See* Tex.Code Crim. Proc. Art. 37.071 (Vernon Supp.2000).

ny, prosecutorial misconduct, the admission of evidence, and irregularities during voir dire. This Court overruled each point of error and affirmed the trial court's judgment. *Graves v. State*, 950 S.W.2d 374 (Tex.Crim.App.1997) (not designated for publication). We denied applicant's May 12, 1997 motion for rehearing. Applicant did not seek certiorari review.

Applicant filed his first application for writ of habeas corpus on June 29, 1998, pursuant to article 11.071 of the Code of Criminal Procedure. The convicting court held evidentiary hearings regarding applicant's seven claims[5] and entered its findings of fact and conclusions of law on February 24, 1999, recommending that this Court deny relief. On June 9, 1999, this Court ordered applicant's writ filed and set for submission on two claims regarding an alibi witness (applicant's girlfriend, Yolanda Mathis) who was subpoenaed for trial by the defense but never testified. This Court heard oral argument on applicant's claims, but denied relief on applicant's original writ. *Ex parte Graves*, No. 73,424 (Tex.Crim.App. February 9, 2000) (not designated for publication).

On June 9, 1999 (the same day that this Court ordered claims from applicant's application for a writ of habeas corpus filed and set), applicant attempted to supplement[6] his application. We concluded that applicant's filing was an "untimely supplement" to the initial application, which did not comply with article 11.071, section 5(a) requirements regarding subsequent applications for a writ of habeas corpus. Accordingly, this Court dismissed applicant's filing as an "abuse of writ" under article 11.071, section 5(c). *Ex Parte Graves*, No. 40,812–02 (Tex.Crim.App. February 16, 2000) (not designated for publication).

Applicant filed a third writ on March 27, 2000, raising two new issues.[7] Then, on

---

5. In its findings of fact and conclusions, the trial court summarized applicant's habeas claims:
   - Applicant's continued incarceration violates his constitutional rights due to newly discovered evidence which establishes his innocence.
   - Applicant's due process rights were violated when the prosecutor improperly intimidated an alibi witness and kept her from testifying at applicant's trial.
   - Applicant was denied effective assistance of counsel at his motion for a new trial hearing.
   - Texas clemency procedures violate applicant's due process rights.
   - Code of Criminal Procedure, article 11.071 violates applicant's right to equal protection.
   - Applicant is entitled to relief because Code of Criminal Procedure, article 37.071 improperly shifted the burden of proof at the punishment phase of his trial by requiring applicant to prove that he was worthy of life.
   - Texas clemency procedures violate applicant's rights to equal protection under the United States and Texas Constitutions.

6. Applicant attempted to introduce four additional claims, each asserting that the State suppressed vital evidence regarding Teresa Carter's (the accomplice's wife) presence at the murder scene and thus violated applicant's rights to equal protection and due process. Specifically, applicant complained that the State informed defense counsel that Carter had failed a polygraph test but did not specifically disclose that Carter failed a question regarding his wife's involvement in the crime. However, at the time of trial, Teresa Carter had been indicted for her participation in this same capital offense. It was in return for not prosecuting Mrs. Carter that the accomplice, Robert Earl Carter, agreed to testify against applicant. Further, applicant complained in his direct appeal that, during closing argument, the prosecutor suggested that Teresa Carter had been present during the murders. At trial applicant had objected to this "fair inference" from the evidence.

7. Those issues concerned claims that 1) the accomplice witness, Robert Earl Carter, recanted his trial testimony before his execution; and 2) applicant's trial counsel was ineffective for failing to prevent "the loss of

July 19, 2000, applicant filed an amendment and supplement to that third petition. In his latest petition, applicant claims, inter alia,[8] that his original habeas counsel was constitutionally ineffective because the latter failed to include four claims (the four additional claims contained in applicant's first "supplement") in applicant's original writ. The issue before us is whether applicant is entitled to have the merits of this ineffective assistance of prior habeas corpus counsel claim heard on a subsequent writ.[9]

## II.

The availability of habeas review for purely constitutional claims is a relatively recent development in American jurisprudence. For more than seven hundred years, the Great Writ served almost exclusively to contest a court's jurisdiction.[10] Early post-colonial American jurists did not consider the common law writ of habeas corpus a mechanism to ensure accuracy or fairness in trial proceedings; these were matters for direct appeal.[11]

Restricting habeas review to claims of jurisdictional defects permitted unconstitutional imprisonment if the confining court had proper jurisdiction over the person and subject matter. The Supreme Court developed a theory of "lost jurisdiction"[12] to address the resulting unfairness, only to abandon the jurisdictional limitation four

his primary witness," Yolanda Mathis (a claim which had been raised in applicant's original habeas petition and rejected both on its merits and as procedurally barred).

8. We summarily dismiss all of applicant's other claims contained within this latest petition as an abuse of the writ under Tex.Code Crim. Proc. Art. 11.071 § 5(c) (Vernon Supp.2000).

9. Of course, ineffective assistance of prior counsel is only a derivative claim which, if recognized and proved by a preponderance of evidence, simply excuses the procedural bar to the underlying constitutional claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). In this case, that underlying claim is: would the result of this capital murder trial have probably been different if the State had informed defense counsel that one of the questions Carter flunked in his polygraph test was whether his wife had been present at or a co-participant in the murder.

10. The writ's English origins precede the Magna Carta. *See* W. Duker, A Constitutional History of Habeas Corpus 27–40 (1980); L. Yackle, Postconviction Remedies 8–9 (1981). Although the precise beginnings of habeas corpus are lost in antiquity, it is quite certain that soon after the Norman invasion various writs of habeas corpus developed in England to ensure the presence of the accused or wit-

nesses at trial. *See* 3 W. Blackstone at *129–38; W. Duker at 129–94. By the fourteenth century, however, Chancery and Common Law courts used writs of habeas corpus to review lower court judgments and examine the cause of imprisonment. *See* Cohen, *Some Considerations on the Origins of Habeas Corpus*, 16 Can.B. Rev. 92, 112 (1938). This review, however, examined only the confining court's jurisdiction, and not the correctness or fairness of the trial or judgment. *See* Oaks, *Legal History in the High Court Habeas Corpus*, 64 Mich.L.Rev. 451, 468 (1966).

11. *See* W. Duker at 229–41. An early Texas case explained: "The writ of *habeas corpus* was not designed to operate as a writ of error or *certiorari*, and does not have their force or effect. It does not deal with errors or irregularities which render proceedings voidable merely, but such only as to render them absolutely void." *Perry v. State*, 41 Tex. 488, 490 (1874). *See also, Ex Parte Scwartz*, 2 Tex.App. 74, 80–81 (1877) (proceeding defective for irregularities and one void for illegality may both be revised upon error or *certiorari*, but only a proceeding void for illegality may discharge on habeas).

12. That is, the violation of an accused's fundamental constitutional rights deprives a trial court of its proper jurisdiction. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

years later in *Waley v. Johnston.*[13] In *Waley*, the Supreme Court lifted the jurisdictional limitation and acknowledged that the writ was available in federal courts to consider constitutional claims, even when the confining court had proper jurisdiction.[14]

The Supreme Court greatly expanded the scope of federal habeas corpus review in *Brown v. Allen*,[15] holding that all federal constitutional questions raised by state petitioners were cognizable on federal habeas review, even if the state had fully and fairly adjudicated them. Justice Jackson concurred in the *Brown* opinion, but warned that the Court had "sanctioned progressive trivialization of the writ until

floods of stale, frivolous and repetitious petitions inundate the docket of the lower courts and swell our own." [16]

■ The inevitable tension that arises when a society attempts to balance important, interrelated, and often competing goals marks the last fifty years of habeas corpus jurisprudence. Courts seek to ensure fundamental fairness to all criminal defendants while simultaneously providing finality of judgments, enhancing deterrence, and maintaining an administratively viable judicial system.

Reasonable minds have disagreed regarding the proper balancing of these interests.[17] Even under the most expansive

---

**13.** 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942).

**14.** *Id.* Texas courts continued to emphasize the jurisdictional basis for habeas review. *See Ex parte Young*, 418 S.W.2d 824, 826 (Tex.Crim.App.1967) (habeas corpus relief available under theory that trial court lost its jurisdiction to convict without due process of law). As late as 1945, Texas courts confined state habeas corpus review to allegations of a judgment void due to the convicting court's lack of subject matter or personal jurisdiction. *See Ex parte Ricketts*, 148 Tex.Crim. 569, 189 S.W.2d 872 (1945) (reiterating this Court's late nineteenth century holdings and quoting *Ex parte Dickerson*, 30 Tex.App. 448, 17 S.W. 1076 (1891) for its proposition that "inferior court judgments can only be attacked by writ of habeas corpus for such illegalities as render them void. Erroneous judgment of inferior courts having jurisdiction of the subject matter and of the person cannot be successfully attacked upon habeas corpus, unless they are so far erroneous as to be absolutely void").

**15.** 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**16.** *Id.* at 536, 73 S.Ct. 397 (Jackson, J., concurring). He further observed that "[i]t must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the

needle is not worth the search." *Id.* at 537, 73 S.Ct. 397.

**17.** Justice Brennan concluded that "conventional notions of finality of litigation in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review." *Fay v. Noia*, 372 U.S. 391, 424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Chief Justice Burger, in contrast, asked rhetorically, "Is a society redeemed if it provides massive safeguards for accused persons, including pretrial freedom for most crimes, defense lawyers at public expense, trials and appeals, retrials and more appeals—almost without end—and yet fails to provide elementary protection for its law-abiding citizens?" Burger, C.J., *Annual Report to the American Bar Association*, 67 A.B.A. J. 290, 291 (1981).

Supreme Court justices have long noted that habeas corpus review, by delaying finality of criminal convictions, tends to undermine the deterrent and rehabilitative functions of the criminal law:

Both the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error, but rather on whether the prisoner can be restored to a useful place in the community.

understanding of the writ's post-conviction availability, however, claimants have had to allege and prove, by preponderance of the evidence, the violation of a specific constitutional provision.[18]

■ Thus, both federal and Texas courts have confined the scope of post-conviction writs of habeas corpus to jurisdictional or fundamental defects and constitutional claims.[19] Violations of statutes, rules, or other non-constitutional doctrines are not recognized.[20] Thus, for example, a trial court's failure to adhere to statutory procedures serving to protect a constitutional provision violates the statute, not the constitutional provision itself.[21] It is true that this Court has not always adhered to its own clear statements of its habeas corpus jurisdiction.[22] We are mindful of the fact that we have not always addressed the threshold issue of our habeas corpus jurisdiction before addressing the merits of a given claim. We should.

*Sanders v. United States*, 373 U.S. 1, 24–25, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting).

18. *Sunal v. Large*, 332 U.S. 174, 179, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). "[T]he writ is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line." *Id.*

19. See, *e.g.*, *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("the established rule with respect to nonconstitutional claims" is that they "can be raised on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice' "); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex.Crim.App.1994) (habeas corpus is reserved for instances in which there exists a jurisdictional defect in the trial court which renders the judgment void or for denials of fundamental or constitutional rights); *Ex parte Watson*, 601 S.W.2d 350 (Tex.Crim.App. 1980) (post-conviction writ of habeas corpus is limited, and "lies only to review jurisdictional defects or denials of fundamental or constitutional rights"); *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex.Crim.App.1989).

20. *See, e.g., Ex parte Sadberry*, 864 S.W.2d 541, 542 (Tex.Crim.App.1993) (habeas writ cannot be invoked for mere statutory irregularities in criminal proceedings); *Ex parte Owenby*, 749 S.W.2d 880, 881 (Tex.Crim.App. 1988) (violation of Speedy Trial Act is non-jurisdictional defect which cannot be raised on habeas review); *Ex parte Tovar*, 901 S.W.2d 484, 486 (Tex.Crim.App.1995) (violation of article 26.13 on taking pleas is not cognizable unless it affected defendant's decision to plead guilty).

21. *See Sadberry, supra* n. 20, at 542 (noting that "[w]hile we do not sanction noncompliance with procedural rules designed to safeguard constitutional rights, the writ was not intended to provide for relief for such noncompliance where the record is otherwise clear on the rights to which the procedural formalities pertain").

22. *See generally*, George Dix & Robert Dawson, Criminal Practice & Procedure § 45.71 (Texas Practice ed. 1995) (quoting and discussing Texas precedent for the appropriate rule concerning cognizability of claims on habeas, but noting that "[u]nfortunately, the framework provided by the case law does not constitute an effective vehicle for achieving the necessary balance. The touchstone concept of 'voidness' lacks any intrinsic meaning.... Certainly the concept of voidness itself provides no guidance as to whether particular procedural defects are best regarded as so cognizable"). Much of this cognizability confusion has been centered upon the historically prodigal use of such terms as "void vs. voidable" and "illegal procedure vs. irregular procedure" without further explanation. *See also Ex parte Tuan Van Truong*, 770 S.W.2d 810, 812 (Tex.Crim.App.1989) (discussing procedural framework and bases for habeas corpus review, but failing to address precisely what issues are cognizable on habeas).

### III.

Applicant contends that he was denied effective assistance of counsel during his initial habeas proceedings because his first habeas counsel failed to include claims in applicant's original habeas petition (namely, the claims that first habeas counsel raised in his second or "supplemental" habeas petition, which we dismissed).[23] Applicant further contends that he is entitled to bring a third[24] habeas petition to assert a claim of ineffective assistance by his first habeas counsel, which deprived him of his due process rights under both the United States and Texas constitutions. We reject his contention for a number of reasons.

#### A. There is no constitutional right to effective assistance of counsel on a writ of habeas corpus.

■ It is a well established principle of federal and state law that no constitutional right to effective assistance of counsel exists on a writ of habeas corpus.[25] The Supreme Court explained in *Pennsylvania v. Finley*[26] that because a defendant "has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction," then clearly, "he has no such right when attacking a conviction that has long since

become final upon exhaustion of the appellate process."[27] Moreover, the Court explained, a convicted person has no constitutional right to *any* counsel, much less "constitutionally effective" counsel, in either discretionary appeals or on writs of habeas corpus:

> [I]t is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane v. Durston,* 153 U.S. 684 [14 S.Ct. 913, 38 L.Ed. 867] (1894). The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel

23. Second habeas counsel also raises additional fact issues which were not included in either the first or second habeas petition. These include the discovery of additional exculpatory evidence supporting claims that were raised and rejected in his first habeas petition.

24. As noted above, this is actually applicant's fourth habeas petition, as he made his present claims only in an "amended" second subsequent habeas petition. Ironically, second habeas counsel has done precisely what he argues was incompetent on original habeas counsel's part: filed an "amended" habeas petition, alleging new claims that he did not include in his prior petition.

25. *See Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("there is no constitutional right to an attorney in state post-conviction proceedings ... consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"); *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Ex parte Mines,* 26 S.W.3d 910, 913–16 (Tex. Crim.App.2000); *Ex parte Davis,* 947 S.W.2d 216, 229 (Tex.Crim.App.1996).

26. 481 U.S. at 555, 107 S.Ct. 1990.

27. *Id.*

to indigent defendants at every stage of the way.[28]

In sum, simply because a state provides for the possibility of a particular procedure or remedy, it does not inexorably follow that the state must also provide legal counsel to one seeking to pursue that remedy. Here, the writ of habeas corpus is a constitutionally available remedy for instances of illegal restraint, but nothing in the federal or Texas constitution requires the State to appoint and pay for counsel to pursue that remedy.[29]

■ If a convicted person has no constitutional right to appointment of *any* coun-

sel in a post-conviction habeas corpus proceeding, it inevitably follows that he cannot claim constitutionally ineffective assistance of counsel in that proceeding.[30] Applicant argues that the Supreme Court's decision in *Edwards v. Carpenter*[31] "undermined" the principle that no constitutional right to counsel (and thus, no claim for ineffective assistance of counsel) exists in a habeas proceeding. However, applicant overlooks that the underlying claim on habeas in *Carpenter* was ineffective assistance of counsel on *direct appeal,* not habeas review.[32]

■ Applicant also notes that the feder-

28. *Id.* at 554, 107 S.Ct. 1990 (quoting *Ross v. Moffitt,* 417 U.S. 600, 609, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)).

29. The United States Supreme Court and this Court have repeatedly held that neither the federal nor Texas constitutions require the appointment of counsel to pursue the available remedy of a writ of habeas corpus. *See Finley, supra* n. 23; *Giarratano, supra* n. 23 (neither Eighth Amendment nor due process clause requires states to appoint counsel for indigent death row inmates seeking state habeas corpus relief); *Coleman v. Thompson, supra* n. 23 (because there was "no constitutional right to an attorney in state post-conviction proceedings," state habeas petitioner was not entitled to relief on claim that his first habeas counsel provided ineffective assistance); *Ex parte Mines, supra* n. 23 at 914 (Texas constitution does not grant more rights on habeas review than does federal constitution; state constitution provides no right to counsel in habeas corpus proceedings); *Ex parte Davis, supra* n. 23 at 229 (habeas petitioner in death penalty case does not have state or federal constitutional right to counsel) (McCormick, P.J., concurring). These and other cases reject claims of a constitutional right to counsel in habeas corpus proceedings made under the Due Process Clause, the Equal Protection Clause, and the Sixth Amendment Right to Counsel.

30. *See Coleman,* 501 U.S. at 752, 111 S.Ct. 2546 (because no constitutional right to counsel exists in a state death penalty habeas case, there can be no deprivation of effective

assistance in that proceeding); *In re Goff,* 250 F.3d 273, 275–76 (5th Cir.2001) (Texas prisoner sentenced to death could not claim ineffective assistance of habeas counsel in successive habeas petition because he had no constitutional right to counsel on habeas review); *Martinez v. Johnson,* 255 F.3d 229, 239–41 (5th Cir.2001) (Texas capital murder applicant foreclosed from claiming ineffective assistance of counsel on subsequent writ because no constitutional right to counsel exists in habeas corpus proceedings) (*as revised* July 20, 2001); *Ex Parte Mines,* 26 S.W.3d at 913–16.

31. 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

32. In *Carpenter, id.,* the United States Supreme Court held that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." 529 U.S. at 453, 120 S.Ct. 1587. Thus, a habeas petitioner who did not bring his ineffective-assistance-of appellate counsel claim at the earliest opportunity has defaulted that claim as well as the underlying claim which was defaulted as a result of prior counsel's ineffectiveness. Under *Carpenter,* a habeas petitioner must show "cause and prejudice" for each one of those defaults. But at least in *Carpenter,* the habeas petitioner had a cognizable constitutional claim of ineffective assistance of counsel on direct appeal. There is no such cognizable constitutional claim for ineffective assistance of habeas counsel.

al AEDPA[33] gives state capital murder habeas petitioners a statutory right to habeas counsel on their federal writs, just as Texas law now gives state capital murder habeas petitioners the same statutory right. Applicant reasons that under the AEDPA, "the decision of the state courts on the merits of a state habeas petition must be generally accepted as legally correct." Therefore, he argues, due process and equal protection[34] require that state habeas applicants receive constitutionally effective representation in their state writ proceedings because of the "tremendous permanent impact" a state's factual determination makes upon applicants' federal review.

The Fifth Circuit has rejected the same contention that applicant makes in two recent cases. In *Martinez v. Johnson*,[35] second habeas counsel in a Texas death row inmate's federal writ proceeding alleged that the first state habeas counsel was ineffective for failing to raise certain claims.[36] The Fifth Circuit examined the numerous federal precedents which have held that there is no constitutional right to counsel on a writ of habeas corpus, and then stated:

> Despite this contrary authority, [applicant] asks this court to "reevaluate" its

precedent in light of the changes engendered by AEDPA and state habeas reforms, which have enhanced the importance of competent state habeas counsel. This panel may not undertake such a reevaluation, as it is bound by controlling precedent. We hold, therefore, that [applicant's] ineffective assistance of counsel claim is procedurally barred and deny his claim for relief.[37]

Similarly, in *In re Goff*,[38] the Fifth Circuit rejected a Texas death row habeas applicant's claim that his initial state habeas counsel provided ineffective assistance in failing to complain about the ineffectiveness of his trial counsel, and therefore he should be entitled to bring a subsequent writ to raise that claim. Noting that this Court had denied[39] Goff's second state habeas application claiming ineffective assistance of his first habeas counsel,[40] the Fifth Circuit rejected the claim that, if a state chooses to appoint counsel for habeas proceedings, its act of grace triggers a constitutional right to effective representation in those proceedings.[41] In *Goff*, the Fifth Circuit reiterated that a statutory right to appointment of counsel on habeas corpus review does not confer a concomitant right to constitutionally effective counsel:

---

**33.** Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C.S. 2254 *et. seq.* (West Supp.2000).

**34.** Applicant relies solely upon federal decisions interpreting the federal constitution. Therefore, we assume that he makes a federal constitutional claim.

**35.** 255 F.3d 229 (5th Cir.2001).

**36.** *Id.* at 234–37.

**37.** *Id.* at 241 (footnote omitted).

**38.** 250 F.3d 273 (5th Cir.2001).

**39.** The Fifth Circuit stated that this Court had "denied" Goff's subsequent writ application on April 24, 2001. In fact, this Court "dis-

missed" his application as an abuse of the writ under 11.071, § 5(c). *Ex parte Goff*, Case No. 37,556–02 (Tex.Crim.App., April 24, 2001) (not designated for publication).

**40.** "At bottom, the decision below [finding a right to competent counsel in post-conviction proceedings] rests on a premise that we are unwilling to accept—that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume." *Id.* at 274–75 (quoting *Finley*, 481 U.S. 551, 107 S.Ct. 1990).

**41.** *Id.* at 275.

[I]n this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review. [Here], the State has made a valid choice to give prisoners the assistance of counsel without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right. In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines enunciated in *Anders*.[42]

In sum, neither the United States Supreme Court nor this Court has ever held that a habeas petitioner has a federal or state constitutional right to counsel in a habeas proceeding. Absent such a constitutional right to counsel, there can be no constitutional right to effective assistance of counsel in a habeas proceeding. Like the Supreme Court and federal courts before us, we decline to turn a legislative act of grace into a constitutional right.

## B. The 1995 Habeas Corpus Reform Act did not create a constitutional right to effective assistance of counsel in death penalty cases.

▪ Applicant also contends that even though the federal and Texas constitutions may not recognize a claim of ineffective assistance of counsel on a writ of habeas corpus, the 1995 Habeas Corpus Reform Act creates a statutory right to "competent" counsel in habeas proceedings. We agree with that proposition. However, applicant then reasons that competent counsel's performance must be constitutionally effective in the specific habeas proceeding. Thus, according to applicant, if an inmate claims that his original habeas counsel was not constitutionally effective, he is entitled to bring a subsequent writ complaining of counsel's deficient performance. We disagree.

▪ Article 11.071, section 2(a)[43] provides that "[a]n applicant shall be represented by competent counsel unless the applicant has elected to proceed pro se ..." Applicant argues that the phrase "competent counsel" signifies the final product of representation, rather than the initial qualifications for appointment. Ap-

42. *Id.* (quoting *Finley*, 481 U.S. 551, 107 S.Ct. 1990); *see also Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir.2001) (emphasizing that *"no constitutional right* to habeas counsel in state collateral proceedings exists, so [Texas death row inmate] *cannot* claim a constitutional violation") (*stay denied*, 533 U.S. 969, 122 S.Ct. 11, 150 L.Ed.2d 793 (2001)); *Fairman v. Anderson*, 188 F.3d 635, 643 (5th Cir.1999) ("[B]ecause appointment of counsel on state habeas is *not constitutionally required,* any error committed by an attorney in such a proceeding 'cannot be constitutionally ineffective'") (quoting *Coleman*, 501 U.S. at 752, 111 S.Ct. 2546); *Werts v. Vaughn*, 228 F.3d 178, 189 n. 4 (3d Cir.2000) (because there is no constitutional right to counsel in habeas proceedings, there can be no claim of ineffective assistance of counsel), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483

(2001); *Miller v. Kemna*, 207 F.3d 1096, 1097 (8th Cir.2000) (no constitutional right to counsel in state habeas proceeding), *cert. denied.*, 531 U.S. 1060, 121 S.Ct. 673, 148 L.Ed.2d 574 (2000); *Ellis v. Armenakis*, 222 F.3d 627, 632 (9th Cir.2000) (no constitutional right to counsel during state habeas proceedings even when that proceeding is the first forum in which defendant could challenge the constitutional effectiveness of counsel); *Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir.2000) (federal habeas claim asserting ineffective assistance of counsel in state habeas proceeding did not state a constitutional claim even though Oklahoma state law provides for appointment of counsel in postconviction capital proceedings).

43. Tex.Code Crim. Proc. Art. 11.071 § 2(a) (Vernon Supp.2000).

plicant's position, however, does not comport with the statute's plain meaning, nor does it comport with the legislative intent behind the statute.[44]

Here, article 11.071 establishes procedures for writs of habeas corpus in all Texas death penalty cases and creates a statutory right to representation.[45] As applicant correctly observes, it would seem an empty gesture to appoint incompetent counsel. We agree that a "potted plant" appointed as counsel is no better than no counsel at all. Our disagreement concerns the time at which counsel is deemed "competent" to represent the habeas applicant.

The words of the statute themselves state that counsel shall be "competent" at the time he is appointed. The reference to "competent counsel" in both subsections (a) and (c) concerns habeas counsel's qualifications, experience, and abilities at the time of his appointment.[46] All of these provisions concern the initial appointment of counsel and continuity of representation rather than the final product of representation.

Moreover, applicant's interpretation of 11.071 section 2 would eviscerate section 5 of the same statute, which generally bars successive petitions. The Legislature enacted the Habeas Corpus Reform Act of 1995 to prevent repetitious writs, including variations on claims which had been previously rejected or claims which could have been brought in the prior application.[47] To accept the notion that the appointment of "competent counsel" means that the counsel appointed must render constitutionally effective assistance of counsel in the particular case would turn article 11.071 section 5 into a perpetual motion machine.

Under applicant's interpretation, a person sentenced to death would be appointed "competent counsel," paid by the state, to investigate and raise all potential claims in an original writ. But if that original writ is rejected and the applicant later contends that counsel could have and should have raised additional facts or legal claims, he may file a subsequent writ to determine whether the original habeas counsel was ineffective for failing to bring those claims. Then, if that second writ is rejected, he may file a third writ contending that the second habeas counsel was ineffective for failing to investigate other new claims or

---

**44.** We interpret a statute in accordance with the plain meaning of its language unless that language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991); *see also Whitelaw v. State,* 29 S.W.3d 129, 131 (Tex.Crim.App.2000).

**45.** Article 11.071, § 2 guides appointment of and representation by counsel in death penalty writs of habeas corpus. Subsection (a) requires applicant to be represented by "competent counsel" unless the prisoner elects to proceed pro se. Subsection (b) requires the trial court to determine whether an indigent applicant sentenced to death desires the appointment of habeas counsel. Subsection (c) outlines the procedure for the trial court to use in appointing "competent counsel." Subsection (d) states that this Court shall adopt rules for the appointment of competent counsel. Subsection (e) sets out the procedure for appointed counsel to use to protect applicant's right to federal habeas review if this Court denies relief. Finally, subsection (f) states that counsel appointed under this statutory provision shall be reasonably compensated. Furthermore, in 1999 the Legislature expressly authorized this Court to appoint new counsel or hold habeas counsel in contempt if the appointed attorney fails to timely file a habeas application for his client. Tex.Code Crim. Proc. Art. 11.071, § 4A (Vernon Supp. 2000).

**46.** *See Ex parte Mines,* 26 S.W.3d at 912.

**47.** *See Ex parte Kerr,* 64 S.W.3d 414, 418 (Tex.Crim.App.2002).

facts that he now asserts are meritorious. And so forth. A claim of ineffective assistance of the prior habeas counsel would simply be the gateway through which endless and repetitious writs would resurrect.[48] If the Legislature had intended ineffective assistance of habeas counsel claims to be an exception to the bar on subsequent applications, it could have made that exception explicit just as it did with the three statutory exemptions that it specified.[49] It did not do so. We do not have the authority to judicially create a fourth exception to the statute. Moreover, in *Davis*, this Court recognized that the Legislature, by enacting article 11.071, section 5, intended to limit this Court's jurisdiction over subsequent habeas petitions in death penalty cases.[50]

The Legislature has consistently shown a great interest in the appropriate appointment of competent counsel in these very serious cases.[51] What the Legislature has

---

**48.** For example, in the present case, applicant asserts that he has met the requirements of section 5(a)(1) for bringing a subsequent writ. That statutory requirement is:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

Applicant asserts that he could not have brought his present claim of ineffective assistance of habeas counsel on his first writ because his first habeas counsel "was not going to raise this issue [concerning his own representation], thus it is reasonable to conclude that this claim was clearly 'unavailable' at the time that [applicant] filed the first petition in the courts." Of course, *every* second habeas counsel (or pro se applicant) could make that same claim against a prior habeas counsel. We do not read section 5(a) as referring to a claim of ineffective assistance of counsel for failing to raise a factual or legal claim in an earlier habeas petition. Rather, the unavailability of the "factual" or "legal" basis refers to those claims which were unavailable *at the time of* the original habeas filing, not those claims which might arise *because of* that original filing.

**49.** *See* Tex.Code Crim. Proc. Art. 11.071 § 5(a)(1)-(3) (Vernon Supp.2000) (establishing exceptions to the bar on subsequent habeas applications for claims of: 1) newly discovered evidence or new rules of law; 2) actual innocence; and 3) actual lack of "deathworthiness").

**50.** *Ex parte Davis*, 947 S.W.2d at 220 (McCormick, P.J., concurring) (noting art. 11.071, § 5 was, in essence, a legislative codification of the judicially created "abuse of the writ" doctrine); *see also Ex parte Carrio*, 992 S.W.2d 486, 490 (Tex.Crim.App.1999) ("while the Legislature 'does not tell this Court how to decide the substantive claims an applicant raises,' and thus does not interfere with 'core judicial functions,' the Legislature has 'complete authority to pass any law regulating the means, manner and mode of the assertion' of a habeas claim"); *Ex parte Golden*, 991 S.W.2d 859, 861 (Tex.Crim.App.1999); *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex.Crim.App.1998).

**51.** In 1999, the Legislature returned responsibility for appointment of counsel to the convicting trial courts. The Legislature based its modification on the common sense proposition that the trial court is more likely to know of the professional competence of potential habeas counsel than this Court. Similarly, the trial court is in a better position to determine the availability and willingness of habeas counsel to serve and to monitor counsel's progress. Simultaneously, the Legislature provided that the state would reimburse counties up to $25,000 for habeas corpus representation of each indigent applicant sentenced to death. Art. 11.071 § 2A(a). Most recently, the Legislature passed the Texas Fair Defense Act, Act of June 14, 2001, 77th Leg., 1st C.S., S.B. 7, § 1 *et. seq.*, which mandates the appointment of a State Task Force on Indigent

not done, however, is evince any intention that its choice of the term "competent counsel" as it applies to the appointment of a habeas attorney *also* applies to the final product or services rendered by that otherwise experienced and competent counsel. To require the trial court to appoint "competent counsel who will render effective assistance to his client in this case" would legislatively mandate a degree of prescience that not even Texas trial judges can be expected to display. We cannot conclude that the Texas Legislature enacted a provision which requires trial judges to engage in such a clairvoyant exercise.

■ Applicant further contends that because the Legislature explicitly permits a death row inmate to bring a post-conviction writ of habeas corpus *and* because it explicitly provides for appointment of competent counsel, we must consider it a "critical stage" of the criminal proceeding. Relying on *Griffin v. Illinois,*[52] applicant then argues that, as a critical stage, the proceeding requires constitutionally effective assistance of counsel. However, *Griffin* merely stands for the proposition that if a state *does* provide for a direct appeal as a matter of right, then that state must, under the Equal Protection Clause, provide counsel to indigent defendants who wish to pursue a direct appeal.[53] We do not agree that *Griffin* constitutionally requires the appointment of counsel to indigent death

row inmates under article 11.071, but even if it did, the Texas Legislature has fulfilled that mandate. In enacting article 11.071 in 1995, the Legislature explicitly ensured that all indigent death row inmates would be appointed competent and compensated counsel for pursuing one writ of habeas corpus. An indigent inmate is not discriminated against in this process.

■ Applicant next notes that the AEDPA explicitly prohibits a claim of ineffective assistance of habeas counsel in federal courts.[54] He argues that this explicit bar in federal courts does not contradict his argument that the federal constitution[55] requires Texas to recognize an ineffective assistance of counsel claim in its state habeas procedures. The Fifth Circuit rejected this contention in *Beazley v. Johnson,*[56] and we reject it also. If the federal constitution and federal statutes *bar* any claim of ineffective assistance of counsel on a writ of habeas corpus in federal courts, we cannot conclude that this same federal constitution *requires* Texas courts to recognize such a claim under state law.

■ Furthermore, applicant's most recent habeas claim is based solely upon an alleged violation of the habeas statute itself. It is not a constitutional claim. Statutory violations simply are *not* cognizable

Defense to further ensure that appropriate standards for appointment of counsel in criminal cases are developed and maintained.

**52.** 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

**53.** *Id.* at 17–18, 76 S.Ct. 585.

**54.** *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during federal or state collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254").

**55.** Applicant relies solely upon United States Supreme Court precedent in this particular argument, thus we presume that he is relying upon the federal, not Texas, constitution.

**56.** 242 F.3d 248, 271 (5th Cir.2001) ("as reflected in the bar raised by § 2254(i), no constitutional right to habeas counsel in state collateral proceedings exists, so [Texas death row inmate] *cannot* claim a constitutional violation").

claims on a writ of habeas corpus.[57] If we were to accept applicant's premise—an allegation of a right to statutorily "competent" counsel in one habeas corpus proceeding is cognizable on a subsequent writ application—the entire concept of the finality of a criminal conviction would fall by the wayside. There must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh the prisoner's right to endlessly litigate new claims. The Texas Legislature has balanced the rights of a convicted death row inmate to seek collateral review of possible violations of his constitutional rights at trial against society's legitimate interest in finality of judgments. The Legislature has explicitly set those limits at one full and fair opportunity to present all such claims in a single, comprehensive postconviction writ of habeas corpus, except for those rare exceptions outlined in section 5 of 11.071. We are not free to judicially disrupt that carefully crafted legislative scheme.

Furthermore, an allegation of ineffective assistance of counsel in a habeas proceeding is entirely derivative; it does not attack the validity, fairness, or constitutionality of the original trial proceeding. It is merely a "gateway" device used to allow an inmate to resurrect a procedurally defaulted claim which he failed to bring at the proper time. However, it is the trial's validity, fairness, and constitutionality that

constitutes the "main event"[58] and proper focus of our analysis.

▮ Finally, applicant's claim of ineffective assistance of original habeas counsel for failing to include a purported "suppression of vital evidence" (that evidence being the possible presence of the accomplice's wife at the murder scene as specifically evidenced by the accomplice's failed polygraph question on this issue) claim in his original writ is not the type that cries out for relief on the basis of "fundamental fairness." As noted above, this claim has already been rejected as an abuse of the writ. The factual basis for it was known: 1) at the time of trial when the prosecutor referred to her possible presence at the murder scene during his closing argument, and 2) at the time of the filing of the original writ because second habeas counsel states that he urged the first habeas counsel to include it in the original writ. First habeas counsel declined to do so. Perhaps he thought it lacked merit.

In sum, we conclude that article 11.071 section 2 grants a statutory right to the appointment of competent counsel, but it does not give a habeas applicant a constitutional or statutory right to effective assistance of that counsel in the particular case that can form the basis of a subsequent writ under article 11.071 section 5. We therefore dismiss the applicant's third

---

57. *See, e.g., Ex parte Sadberry*, 864 S.W.2d 541, 542 (Tex.Crim.App.1993) (habeas relief not available for statutory irregularities in trial proceedings); *Ex parte Tuan Van Truong*, 770 S.W.2d 810, 811–13 (Tex.Crim.App.1989) (setting out historical rationale for distinguishing between cognizable constitutional claims on habeas review and procedural irregularities which are not); *Ex parte Banks*, 769 S.W.2d 539, 540–41 (Tex.Crim.App.1989) (habeas relief not available for violations of a procedural statute); *Ex parte Russell*, 738 S.W.2d 644, 647 (Tex.Crim.App.1986) ("[h]a-

beas corpus is available only to review jurisdictional defects, or denial of fundamental or constitutional rights") (citations omitted).

58. *See Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (the trial is the time and place when all evidence should be presented to decide the guilt or innocence of the accused; the trial is the "main event," not a "tryout on the road" to appellate reversal).

habeas corpus petition as an abuse of writ under article 11.071 section 5(c).

PRICE, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

JOHNSON, J., filed a dissenting opinion.

HOLCOMB, J., filed a dissenting opinion in which PRICE and JOHNSON, J.J., joined.

PRICE, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

The majority presents a severely limited view of cognizability. Article 11.071 represents a legislative declaration that the State has no legitimate interest in the finality of a judgment of conviction and death sentence obtained in the absence of

the appointment of competent counsel for the preparation of the initial application. "Competent counsel" ought to require more than a human being with a law license and a pulse. Today the majority requires nothing more than that to ensure society's interest in fundamental fairness. Article 11.071 and the United States Constitution require that we not dismiss the application in this case. Therefore, I respectfully dissent.

## I. Cognizability

The claims that are cognizable in an application for writ of habeas corpus are those that we designate. Neither the Texas Constitution nor article 11.071 dictate what claims are or are not cognizable.[1]

---

1. As Judge Teague once explained:

   In this connection, I am lately inclined to think that the focus of cognizability should be a more general theory of forfeiture than voidness. What is cognizable by way of habeas corpus is a matter to be determined by this Court. It can be judicially expanded or contracted to meet the current requirements of the system. Moreover its reach should comport with fairness. Although all defects rendering a proceeding void should continue to be cognizable in habeas corpus for powerful reasons of jurisdiction, I now believe that other defects might also be brought within the scope of the writ under circumstances objectively tending to excuse what would otherwise constitute a forfeiture of the right to complain, so long as the applicant would have been entitled to relief either under the law existing at the time of the alleged defect or under subsequent retroactive changes in the law, and so long as the habeas proceeding will not involve relitigation of an issue previously and finally determined adversely to the applicants position unless subsequent retroactive changes in the law would have required a different result.

   In *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court of the United States stated the following in reference to the subject of

   "fundamental rights in the federal constitution": "They are not ephemeral enactments, designed to meet passing occasions. They are 'designed to approach immortality as nearly as human institutions can approach it.' The future is their care, and provision for events of good and bad tendencies of which no prophecy can be made. In the application of a constitution, therefore, our contemplation cannot be only of what has been, but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general *principles* would have little value, and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction." *Also see Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

   I find that these words have the same meaning when it comes to what meaning we should give to one of the most fundamental rights guaranteed to our citizenry through the Texas Bill of Rights, which is the fundamental and inviolate right to the writ of habeas corpus, which right, by our Constitution, "shall never be suspended."

The applicant's claims are not cognizable in this case only because the majority says they are not.

I agree with the majority that there are competing interests at stake, and that reasonable minds have disagreed on how to balance society's interest in finality and fundamental fairness. *Ante* majority op at 108–09. The majority goes on to say that: "Even under the most expansive understanding of the writ's post-conviction availability, however, claimants have had to allege and prove, by a preponderance of the evidence, the violation of a specific constitutional provision." For this proposition, the majority cites *Sunal v. Large,* 332 U.S. 174, 179, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). In that case the United States Supreme Court reviewed the availability of *federal* habeas corpus relief to *federal* criminal defendants. As such, the case and its conclusions are not particularly relevant to the question we address today: Whether the applicant may raise ineffective assistance of his first habeas counsel in a subsequent writ under article 11.071. The majority assumes without any analysis that in this context the interest in the judgment's finality outweighs the interest in fundamental fairness. We should not give short shrift to the implementation of any habeas applicants rights, much less an applicant who files under article 11.071.

The history of the Great Writ going back over the last several centuries, although edifying, does not help us get to the bottom of the legislatures intent when it enacted article 11.071. It is true that at times we have confined the scope of post-conviction writs of habeas corpus to jurisdictional or fundamental defects or constitutional claims. But that is not the end of the discussion.

We are the guardians of the process. That we have been unclear in the past about what claims are reviewable, without more, is an insufficient reason for this Court to conclude that finality is a superior interest to the fundamental fairness in criminal proceedings in this instance.

Even under the majority's limited view of cognizability, how can the appointment of counsel for applicants one and only writ of right not be a fundamental right? The majority discusses why it believes the right to competent counsel under article 11.071 and the denial of the right thereto are not of constitutional dimension,[2] but it fails to explain how the right to counsel in article 11.071 is not a fundamental right. Does the majority assume that fundamental and constitutional rights are the same? Why then in our opinions do we repeatedly refer to constitutional and fundamental rights? Should we assume that the term fundamental in our opinions was mere surplusage? Apparently that is the case under the majority's view of the state of the law.

The fact that article 11.071 applicants have a right to direct appeal is of no moment. The claims that may be raised in an application for writ of habeas corpus are, by procedural rules, different from

---

Art. 1, §§ 12, Texas Constitution. Also see Art. 1.08, V.A.C.C.P., which states without any limitation or qualification whatsoever that "The writ of habeas corpus is a writ of right and shall never be suspended."

Therefore, I do not approve denying applicant relief in the instant cause, simply because the proceeding he attacks is not absolutely void, without first affording him a chance to demonstrate that he has not yet had a full and fair opportunity meaningfully to litigate the issues raised in his habeas corpus application or that his failure to do so before now should be excused. *Ex parte Tuan Van Truong,* 770 S.W.2d 810, 815 (Tex.Crim.App.1989) (Teague, J., dissenting).

**2.** A conclusion with which I strongly disagree. *See infra* Part III.

what may be raised on direct appeal. *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim.App.1989). We continually deny relief on the basis that a certain claim could have been or should have been raised on direct appeal.[3]

I have grave concerns about dismissing claims like the applicant's. By its own hand, this Court appointed the applicants first habeas counsel, an attorney who by any reasonable assessment was not prepared to handle a case of this type.[4] Now the same Court washes its hands of applicants who wish to have heard the merits of claims ignored or undiscovered by the inexperienced habeas counsel that we appointed.

Under the decisions announced by the Court today, a habeas applicant has no recourse for the appointment of a less-than-competent attorney, unless counsel fails to file an application or files a document that does not constitute an application. *Ex parte Kerr,* 64 S.W.3d 414, 419 (Tex.Crim.App.2002).

Calling ineffective assistance of counsel claims derivative contributes little to our discussion. Of what significance is the fact that it is a derivative claim? Isn't everything that is brought on habeas derivative in this fashion? Ultimately, the question that we address is whether the applicant had a fair trial. To do this we look at the claims raised, which are derivative of the ultimate claim: My trial was unfair. The majority creates a system whereby the applicant must plead and prove everything before getting past the elusive section five bar. To what end is a remand to the convicting court conducted? *See* art. 11.071 § 6.

Before we decide to review the scope of cognizability under 11.071 (and seemingly article 11.07), we should order briefing and argument on the issue. In the absence of briefing and argument, the majority ought to at least weigh and discuss the options and give the bench and bar a policy that makes sense in this day and age.

## II. What Did the Legislature Mean When It Enacted Article 11.071?

The majority claims that the reference to competent counsel in article 11.071, section 5(a) & (c) concerns counsel's qualifications, experience and abilities at the time of appointment and during the continuity of the representation. But, the majority concludes, counsel's competence does not apply to the final product. Counsel is required to be competent up until just before the final product, the application, is prepared. At that point, counsel may go to pieces, and there is no recourse for the applicant. Even assuming that the reference to competent counsel in article 11.071 concerns counsel's qualifications and abilities, this reference is not inconsistent with requiring that the final product of counsel's representation be competent work.

The majority also claims that the applicant's interpretation of competent counsel would eviscerate section five's general bar to successive applications. Does the majority suggest that Texas is somehow incapable of appointing counsel who turn in competently prepared applications? The majority in *Ex parte Kerr* cites language

---

3. Because we are not required to write an opinion explaining the reason or reasons we deny relief on applications of habeas corpus, the number of times that we deny relief on the basis that the claim should have been raised on direct appeal may not be apparent to most members of the bench and bar.

4. We appointed applicant's first habeas counsel in October 1997. At that time, counsel had been out of law school for just under three years and had been licensed by the Texas Bar for just over two years.

from Representative Pete Gallego to the effect that the legislature desired to provide capital defendants with a full and fair opportunity to litigate habeas claims.[5] Indeed, the bill analysis prepared for the bill that the legislature enacted explains the legislation's purpose.

> Currently the average time between a capital conviction and the imposition of a death sentence is 8.3 years, and it is not unusual for a death-sentenced inmate to be on death row for 16 years before the imposition of sentence. This delay is attributable to a number of factors, not the least of which is that inmates are not currently limited in the number of state habeas applications that they can file.[[6]] Delay also occurs when death-sentenced inmates are without legal representation.

> If enacted, C.S.S.B [Committee Substitute Senate Bill] 440 would streamline the review of capital convictions and significantly reduce the time between conviction and the imposition of a death sentence, *while assuring that capital convictions are fully and fairly reviewed.*

House Comm. on Jurisprudence, Comm. Rep., Apr. 27, 1995, Tex.C.S.S.B. 440, 74th Leg., R.S. (1995) (emphasis added). The legislature had no intent to expedite the imposition of death sentences at the expense of a full and fair review of the merits of inmates' claims. The majority's view of competent counsel deletes this requirement from the statute. The appointment of counsel is meaningless without the requirement that counsel be competent.

The majority also claims that if the legislature had intended ineffective assistance

of writ counsel to be an exception to the section five bar on subsequent applications, it could have said so. It did. Section five includes an exception to the bar if the factual basis of the claim was not available when the initial application was due. A factual claim was not available if it was not ascertainable through the reasonable exercise of diligence on or before the date the initial application was due. Article 11.071 § 5(a)(1) & (e). I agree that we recognized in *Ex parte Davis,* 947 S.W.2d 216, 226 (Tex.Crim.App.1996) (McCormick, P.J., concurring with four judges joining), that the legislature intended to limit this Court's jurisdiction over subsequent applications. But we did not conclude, nor could we, that the limits placed on our jurisdiction were to be had at the expense of a full and fair review.

Down the slippery slope we go, claims the majority. If we provide for competent counsel as the applicant envisions it, the floodgates will open with subsequent applications; there will be no end to the subsequent applications filed that allege ineffective assistance of prior habeas counsel. But once competent counsel is appointed to competently investigate and present the factual and legal claims available to the applicant, no subsequent application could or would be reviewed for ineffective assistance of habeas counsel.

The majority notes that the legislature has demonstrated an interest in the appropriate appointment of counsel in serious cases. I do not discount the legislature's efforts in this area. In recent years it has sought to improve the quality of representation that all criminal defendants receive in Texas, including the right to appoint-

---

5.  *Ex parte Kerr,* 64 S.W.3d 414, 418–19 (Tex. Crim.App.2002).

6.  This was not technically true. The number of applications an inmate could file was not

limited by statute, but an inmates ability to seek relief was regulated by the abuse of the writ procedure. *Ex parte Davis,* 947 S.W.2d 216, 226 (Tex.Crim.App.1996).

ment of competent counsel under article 11.071, provided in 1995. The majority cites the recently-enacted Texas Fair Defense Act, Act of May 24, 2001, 77th R.S., R.S. ch. 906, 2001 Tex. Gen. Laws 1697, and the 1999 amendment of article 11.071 to require that appointment of counsel be made by the convicting court instead of this Court, Act of May 20, 1999, 76th Leg., R.S., ch 803, 1999 Tex. Gen. Laws 3431.

The Texas Fair Defense Act fills a dire need in this state for ensuring quality representation of indigent criminal defendants. Assuming that what improves the quality of the defense bar generally also improves the quality of counsel appointed to represent applicants under article 11.071, the Act is of benefit to such applicants. But the Act does not apply to article 11.071 applicants. It applies to the pretrial appointment of counsel to indigent defendants.

The 1999 amendment of article 11.071 did not significantly alter the appointment of counsel for habeas applicants. Convicting courts make their appointments according to rules adopted by this Court. Texas Court of Criminal Appeals' Rules for the Appointment of Attorneys Under Article 11.071 Sec. 2(d), V.A.C.C.P. (effective Sept. 1, 1999). Under those rules, this Court maintains a list of attorneys eligible for appointment. After the effective date of the amendment, the convicting court chooses from the list of attorneys that we created and maintain.

The majority claims that the legislature could not have meant for competent counsel to apply to the final product because it would require convicting court judges to be prescient and clairvoyant. I wonder

how much clairvoyance is required to determine that an attorney is not qualified and able if, by the time he received his first appointment in an 11.071 case, he had been out of law school for only two years, had been licensed to practice law for only a year-and-a-half, and had never been counsel in a capital murder case but had assisted in two non-capital murder cases.[7] Assuming that this Court has improved its method for choosing counsel for the list since applicant's initial application was filed, not much clairvoyance is necessary to pick a name from the list and find competent counsel. Apparently, I have more faith in Texas trial judges than does the majority.

Finally the majority purports to conduct a review of the merits of the applicant's claim. After determining that an applicant meets the section five bar to article 11.071, the appropriate procedure is to remand to the convicting court for findings because we are not authorized to receive evidence. Tex.Code Crim. Proc. art. 11.071 § 8; *Ex parte Rodriguez,* 169 Tex. Crim. 367, 334 S.W.2d 294 (1960). It is inappropriate for the majority to address the merits at this time, especially in such a cursory manner and before receiving findings from the convicting court.

### III. The Constitutional Question

The Supreme Court has held that criminal defendants are entitled to effective assistance of counsel at trial and on direct appeal. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In the context of trial, the right to effective

---

**7.** When the applicant's initial habeas counsel was appointed by this Court to another capital murder defendant's case, such was the state of his resume. *See* Second Application for Writ of Habeas Corpus, at 8, *Ex parte* *Etheridge,* No. 36–443–02 (Tex.Crim.App. filed Oct. 31, 2001). We appointed the same counsel to the applicant's case less than a year later.

assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments. *Gideon*, 372 U.S. at 339–41, 83 S.Ct. 792. The right to effective assistance of counsel on direct appeal is more complicated and is based on a combination of Fourteenth Amendment due process and equal protection. *See generally Ross v. Moffitt*, 417 U.S. 600, 608–12, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

In *Douglas v. California*, the Supreme Court articulated the rationale for the requirement of effective assistance of counsel. The Court addressed a California procedure for direct appeal that required an indigent defendant to make an initial showing of merit to obtain counsel for the direct appeal. *See Douglas*, 372 U.S. at 354–55, 83 S.Ct. 814. The Court held that due process requires effective assistance of counsel on direct appeal and that requiring an indigent defendant to make a preliminary showing of merit before he is entitled to have counsel appointed to review his case "does not comport with fair procedure." *Id.* at 357, 83 S.Ct. 814. The Court also held that equal protection requires the right to counsel on direct appeal because, when "the merits of the one and only appeal an indigent defendant has as of right are decided without the benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Ibid.*

In *Burns v. Ohio*, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959), the Supreme Court explained that: "[O]nce the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty." *Id.* at 257, 79 S.Ct. 1164.

In *Moffitt*, and again in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court explicated the of limits the right to effective assis-tance of counsel. The Court said that there is no constitutional right to counsel on discretionary review after direct appeal. *Moffitt*, 417 U.S. at 615, 94 S.Ct. 2437. This is because "the Fourteenth Amendment does not require absolute equality or precisely equal advantages." *Id.* at 612, 94 S.Ct. 2437. The Supreme Court has held that states cannot adopt procedures that prevent a defendant from pursuing any appeal at all because of his indigence, or provide only "a 'meaningless ritual'[for a poor defendant] while others in better economic circumstances have a 'meaningful appeal.'" *Ibid.* But that is not the case in discretionary review after direct appeal.

In *Coleman*, the Supreme Court held that there is no constitutional requirement of effective assistance of counsel in state post-conviction proceedings. This is because there is no right to counsel in state habeas proceedings. *See Coleman*, 501 U.S. at 757, 111 S.Ct. 2546. Coleman sought federal habeas corpus relief because his state appeal of his post-conviction hearing was procedurally barred for filing the notice of appeal too late. *Id.* at 752, 111 S.Ct. 2546. The Supreme Court explained that an attorney's ignorance or inadvertence is not a reason to look past the procedural default of state-court review. *Id.* at 753, 111 S.Ct. 2546. In that instance, the attorney is the defendant's agent, and the defendant bears the risk of the attorney's acts or omissions in furtherance of the litigation. *Id.* at 753–54, 111 S.Ct. 2546.

But when there is a constitutional requirement of effective assistance of counsel and counsel's acts or omissions constitute ineffective assistance, the error is imputed to the State because the State is required to provide effective assistance of counsel to indigent criminal defendants. *Ibid.* It is a different situation when the state has no constitutional responsibility to provide a right to counsel. In the absence of a

constitutional requirement for counsel, the defendant bears the risk of mistakes made by counsel.

A defendant who receives ineffective assistance of counsel at trial—whether his counsel is retained or appointed—may raise the complaint on direct appeal, when he is entitled to effective assistance for his one appeal as of right. *See Douglas,* 372 U.S. at 357, 83 S.Ct. 814. But we have said that direct appeal is an imperfect avenue for raising ineffective assistance of counsel claims.

A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

*Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999).

In *Coleman,* the Supreme Court left open the question whether there is an exception to *Finley*[8] and *Giarratano*[9] where state collateral review is the first place that a state criminal defendant can present a particular challenge to his conviction. *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546;[10] *see also Daniels v. United States,* 532 U.S. 374, 387, 121 S.Ct. 1578, 1586, 149 L.Ed.2d 590 (2001) (Rehnquist, C.J., concurring) (citing *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546) ("We have left open the question whether such ineffective assistance [of state habeas counsel] can establish a constitutional violation"). To the extent that the Fifth Circuit Court of Appeals holds that the question no longer remains open,[11] that Court is mistaken. And to the extent that the majority fails to address this open question, it is also wrong.[12]

It is conceivable that a criminal defendant would have an attorney at trial who is

---

**8.** *Pennsylvania v. Finley,* 481 U.S. 551, 559, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (holding that there is no right to counsel beyond the initial direct appeal, and thus, no right to counsel on discretionary review).

**9.** *Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (holding that there is no right to counsel beyond the initial direct appeal, and thus, no right to counsel in collateral attacks).

**10.** In *Coleman,* the defendant complained about ineffective assistance of counsel on appeal from the state post-conviction proceedings. The Supreme Court explained that it need not address the question of an exception to the *Finley* and *Giarratano* rules because the claim about which the appellant complained and that was procedurally defaulted by his collateral-review-appeal counsel had been reviewed on the merits by the convicting court. *Coleman,* 501 U.S. at 756, 111 S.Ct. 2546.

**11.** *See Martinez v. Johnson,* 255 F.3d 229, 239–40 (5th Cir.2001); *In re Goff,* 250 F.3d

273, 275 (5th Cir.2001); *Beazley v. Johnson,* 242 F.3d 248, 270–71 (5th Cir.2001).

**12.** Moreover, we are not bound by lower federal court opinions interpreting constitutional rights, although they do present persuasive authority. *Lockhart v. Fretwell,* 506 U.S. 364, 376, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring); *Steffel v. Thompson,* 415 U.S. 452, 482 n. 3, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring); *Vaughn v. State,* 931 S.W.2d 564, 568 (Tex.Crim.App.1996). One legal commentator has explained the precedential value of inferior federal courts in this way:

The duty to obey hierarchical precedent tracks the path of review followed by a particular case as it moves up the three federal judicial tiers: A court must follow the precedents established by the court(s) directly above it. District courts must follow both Supreme Court decisions and those issued by whichever court of appeals has revisory jurisdiction over its decisions, and courts of appeals must heed Supreme

ineffective and then have an attorney in habeas proceedings who also is ineffective. If a criminal defendant's trial counsel is ineffective, he is almost always forced to challenge counsel's ineffectiveness in a post-conviction writ application. He usually cannot raise the claim on direct appeal because the trial record is almost always inadequate for a proper review.[13] If the defendant's habeas counsel performs deficiently, a meritorious claim may not be adequately raised or investigated. Applicants only get one shot at habeas corpus relief. If the attorney appointed on his first writ is incompetent, then a defendant, who was deprived of effective assistance of counsel at trial, has no means to enforce his constitutional right to affective assistance of counsel at trial.

## IV. Conclusion

The crime for which the applicant was convicted is unimaginably horrific. I do not dispute that. But we need to keep in mind that every criminal defendant, be he virtuous, depraved, innocent, or guilty, is entitled to the same constitutional protections. The majority's analysis and cited authority do not support its conclusion that we should dismiss the application. I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

I respectfully dissent. I believe that art. 11.071 of the Texas Code of Criminal Procedure requires that applicant be provided with effective assistance of habeas counsel, and that an application for a writ of habeas corpus is the appropriate avenue for which a claim of ineffective assistance of habeas counsel be brought.

Section 2(a) of art. 11.071 provides that unless an applicant who has been sentenced to death and is seeking relief through an application for a writ of *habeas*

---

Court decisions. However, a court can ignore precedents established by other courts so long as they lack revisory jurisdiction over it. Thus, a circuit court of appeals is not bound by decisions of coordinate circuit courts of appeals, and a district court judge may ignore the decisions of "foreign" courts of appeals as well as other district court judges, even within the same district.

The doctrine also applies to state and territorial courts. These courts are bound by precedent set by the United States Supreme Court, which has the authority to review their federal law decisions. But the state and territorial judges are not bound by precedents established by courts that do not have the authority to review those judges' decisions, since, as in the Article III regime, authority to establish precedent follows the path of appellate review. Thus a state court need not follow the holdings of any inferior federal court, including the court of appeals in whose geographical region the state court sits.

Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedents,* 46 Stan. L.Rev. 817, 825 (1994).

**13.** This is true unless trial counsel files a motion for new trial—which was done in this case—and raises his own ineffectiveness—which was not done in this case. Indeed, should not claims to be unaware of the difficulty in producing an adequate record in a motion for new trial.

> While expansion of the record *may* be accomplished in a motion for new trial, that vehicle is often inadequate because ... time constraints [prevent an adequate investigation] and because the trial record has generally not been transcribed at this point. *Jackson [v. State],* 877 S.W.2d [768] at 772 n. 3 [ (Tex.Crim.App.1994) ]. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

*Ex parte Torres,* 943 S.W.2d 469, 475 (Tex. Crim.App.1997) (emphasis added).

*corpus* elects to proceed *pro se*, he "shall be represented by competent counsel."[1] Based on similar statutory requirements, several other jurisdictions have determined that a right to *habeas* counsel necessarily entails that such counsel be effective. In *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court reasoned that "the promise ... that a criminal defendant has a [federal constitutional] right to counsel on appeal ... would be a futile gesture unless it comprehended the right to the effective assistance of counsel." Relying on the logic of *Evitts,* the Supreme Court of Iowa concluded in 1985:

> We believe the statutory grant of a postconviction applicant's right to court-appointed counsel [in postconviction proceedings arising out of prison disciplinary hearings] necessarily implies that that counsel be effective.... Nothing in our postconviction act indicates an intent on the part of the legislature that a different rule would apply. It would seem to be an empty gesture to provide counsel without any implied requirement of effectiveness.

*Patchette v. State,* 374 N.W.2d 397, 398–9 (Iowa 1985).

More recently, the Supreme Court of Iowa has applied the rationale of *Patchette* to the statutory grant of counsel for postconviction proceedings attacking a conviction. *Dunbar v. State,* 515 N.W.2d 12, 14–15 (Iowa 1994). Similarly, the Supreme Court of Connecticut has reasoned that a statutory right to *habeas* counsel "would become an empty shell if it did not embrace the right to have the assistance of a competent counsel." *Lozada v. Warden,* 223 Conn. 834, 613 A.2d 818, 821–2 (1992) (citing *Cullins v. Crouse,* 348 F.2d 887, 889 (10th Cir.1965) & *United States v. Wren,* 682 F.Supp. 1237, 1241–42 (S.D.Ga.1988)). In 1997, the Supreme Court of Connecticut reaffirmed its holding and rationale in *Lozada. Iovieno v. Commissioner of Correction,* 242 Conn. 689, 699 A.2d 1003, 1010 (1997). Earlier this year, the Supreme Court of South Dakota reached the same conclusion when it held that "[w]e will not presume that our legislature has mandated some useless formality requiring the mere physical presence of counsel as opposed to effective and competent counsel." *Jackson v. Weber,* 623 N.W.2d 71, 74 (S.D.2001) (internal quotation marks omitted) (citing *Lozada* and *Iovieno, supra* ). Similarly, the Supreme Court of Pennsylvania has held that an indigent defendant has a statutory right to the appointment of counsel in a post-conviction proceeding:

> It is axiomatic that the right to counsel includes the concomitant right to effective assistance of counsel.... Indeed the right to counsel is meaningless if effective assistance is not guaranteed. Since appellant was entitled to representation by an attorney in his pursuit of this collateral attack, he was entitled to adequate representation of his claims at both the hearing and appellate levels.

*Com. v. Albert,* 522 Pa. 331, 561 A.2d 736, 738 (1989) (citing *Com. Ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967)).[2]

---

**1.** Although applicant does not claim in his brief that he has a statutory right to effective assistance of counsel, he did claim at oral argument that effective assistance of counsel was mandated by § 2(a)'s requirement of "competent counsel."

**2.** The Supreme Court of Nevada has also reached this conclusion, albeit in *dicta.* In *McKague v. Whitley,* 112 Nev. 159, 912 P.2d 255, 257–8 (1996), the court held that because the petitioner had no statutory right to counsel in a post-conviction proceeding, he had no right to effective assistance of counsel in such a proceeding. In a footnote, the court noted that a recently enacted statute, which was not operative at the time that the petitioner in

Section 2(a) of art. 11.071 mandates not only the appointment of counsel, it specifically mandates the appointment of *competent* counsel. Thus, the rationale of the above-cited cases applies even more forcefully here; the use of such language by the legislature indicates a requirement of the effective assistance of *habeas* counsel.[3] Moreover, unlike the federal *habeas* statute, our legislature has not specifically precluded a claim of ineffective assistance of *habeas* counsel.[4] Thus, under the terms of the statute, applicant has a statutory right to effective assistance of *habeas* counsel.

In determining the requirements that must be met in order to show that *habeas*

counsel was ineffective, I find the test for showing that trial counsel was ineffective, as set out by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to be persuasive. Under that test, counsel is presumed to have been effective. *Id.* at 689, 104 S.Ct. at 2065. In order to overcome this presumption, applicant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," in order to show that "counsel's representation fell below an objective standard of reasonableness … as measured by prevailing professional norms." *Id.* at

*McKague* was appointed post-conviction counsel, mandated appointment of counsel for a petitioner's first post-conviction proceeding. *Id.* at 258 n. 5. Thus, the court concluded:

> As a matter of statutory interpretation, we note that where state law entitles one to the appointment of counsel to assist with an initial collateral attack after judgment and sentence, 'it is axiomatic that the right to counsel includes the concomitant right to effective assistance of counsel.' Thus, a petitioner may make an ineffectiveness of post-conviction counsel claim if that post-conviction counsel was appointed pursuant to [the recently-enacted statute].

*Id.* (citing *Albert, supra* ).

3. Given the equivalence of "competent" counsel and the "effective assistance of counsel" that has been maintained by numerous other courts, including the United States Supreme Court, I find the majority's attempt to differentiate between the two (*ante,* at 113–14) unpersuasive. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (determining that "the proper standard for attorney performance is that of reasonably effective assistance. … The Court indirectly recognized as much when it [previously] stated … that a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases") (citations and

internal quotation marks omitted); *Jackson,* 623 N.W.2d at 74 (stating that "[t]he effective assistance of counsel standard announced in *Strickland* is well established" and that "it would be absurd to have the right to appointed counsel who is not required to be competent") (citations and internal quotation marks omitted); *Iovieno,* 699 A.2d at 1010 (stating that "we have recognized that it would be absurd to have the right to appointed counsel who is not required to be competent. Therefore, we held that the writ of habeas corpus is an appropriate remedy for an ineffective assistance of habeas counsel claim") (citations and internal quotation marks omitted); *Lozada,* 613 A.2d at 821 (determining that "[t]he right to effective assistance of counsel is predicated on the statutory right to habeas counsel" and that "[i]t would be absurd to have the right to appointed counsel who is not required to be competent").

Moreover, as the majority notes in a separate case, one of the purposes of art. 11.071, according to Representative Pete Gallegos, is that a defendant get "one very well-represented run at a habeas proceeding." *Ex parte Kerr,* No. 35,065–04, 64 S.W.3d 414, 418–19 (Tex.Crim.App.2002). At the very least, that statement supports the notion that, under art. 11.071, a defendant is entitled to effective assistance of counsel.

4. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254").

687–690, 104 S.Ct. 2052, 2064–66; *see also Dunbar,* 515 N.W.2d at 15; *Patchette,* 374 N.W.2d at 399. Also, applicant must prove prejudice, i.e., applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *see also Dunbar,* 515 N.W.2d at 15; *Patchette,* 374 N.W.2d at 399. Requiring an applicant to establish both deficient performance and prejudice would insure that an application for a writ of *habeas corpus* pursuant to art. 11.071 is the proper vehicle to bring such a claim.[5] That is, by demonstrating that there is a reasonable probability that, had *habeas* counsel performed effectively, the applicant would have been entitled to relief in the earlier *habeas* proceeding, an applicant who prevails would have shown that he is entitled to relief "from a judgment imposing a penalty of death." *See* art. 11.071, § 1.

A claim on writ of *habeas corpus* of ineffective assistance of prior *habeas* counsel is, by definition, a subsequent application for a writ of *habeas* corpus. Thus, before its merits can be considered, the legislature has required that one of the following be established:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

---

**5.** The majority claims that "the scope of postconviction writs of habeas corpus [is confined] to jurisdictional or fundamental defects and constitutional claims." *Ante,* at 109. However, this is not accurate. For instance, we regularly use the habeas writ to grant habeas relief to imprisoned applicants in the form of time credits, relief which the legislature has explicitly authorized. *See* Tex. Gov't Code § 501.0081(b) & (c); *Ex parte Busby,* 67 S.W.3d 171 (Tex.Crim.App. 2001); *Ex parte Millard,* 48 S.W.3d 190 (Tex.Crim.App.2001); *Ex parte Kuester,* 21 S.W.3d 264 (Tex.Crim. App.2000); *Ex parte Gomez,* 15 S.W.3d 103 (Tex.Crim.App.2000); *Ex parte Hall,* 995 S.W.2d 151 (Tex.Crim.App.1999); *Ex parte Golden,* 991 S.W.2d 859 (Tex.Crim.App.1999); *Ex parte Roberts,* 987 S.W.2d 575 (Tex.Crim. App.1999). Moreover, our precedents have recognized that some statutory violations are so egregious as to be cognizable on collateral attack. *See, e.g., Heath v. State,* 817 S.W.2d 335 (Tex.Crim.App.1991) (non-capital defendant's sentence not authorized by law); *Ex parte McIver,* 586 S.W.2d 851 (Tex.Crim.App. 1979) (non-capital defendant's sentence not authorized by law).

Furthermore, the legislature has in no way limited relief under art. 11.071 to "jurisdictional or fundamental defects and constitutional claims." Instead, by the plain language of art. 11.071, § 1, an applicant's writ application need only "seek[] relief from a judgment imposing a penalty of death."

In *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex.Crim.App.1996), we focused not on whether a claim brought on habeas could be characterized as "constitutional" or as involving a "fundamental" or "jurisdictional" defect, but on whether the claim could have been brought on direct appeal. Given, as I have argued above, that applicant is statutorily entitled to effective assistance of counsel, a writ application is the only manner in which such a claim may be brought; certainly, it cannot be brought on direct appeal. Thus, to disallow such a claim is to leave applicant with a right that is without a remedy.

Art. 11.071, § 5(a). A claim of ineffective assistance of *habeas* counsel in the first writ application would not be ripe until the first application has been filed and disposed of. Thus, in such a case, an applicant who presented such a claim would be able to demonstrate, pursuant to § 5(a)(1) of art. 11.071, that the factual and legal bases for his claim were unavailable on the date that he filed the previous application. Under most circumstances, claims of ineffective assistance of *habeas* counsel raised after the second writ application would be precluded by § 5(a)(1), since such claims could have been brought in the second application. Moreover, the majority's fears that recognizing a right to effective assistance of habeas counsel would lead to "endless and repetitious writs" (*ante,* at 115) is unfounded. Under the approach outlined above, such a right is co-extensive only with an applicant's legislatively mandated right to one *habeas* counsel. Once that right is extinguished, any subsequent writ applications are not subject to such an attack.

The instant application is applicant's third, and as such, it would appear to be precluded by § 5(a)(1). However, applicant was represented by the same attorney in both of his prior applications. Applicant's initial writ application was received by this Court on March 15, 1999. His second writ application was received on June 14, 1999, while the first application was still pending. We denied the initial application on February 9, 2000 and dismissed the second application on February 16, 2000. It cannot reasonably be expected that an attorney will make a claim for *habeas* relief based upon his own prior ineffective assistance. Had we granted relief on the first application, there would have been no cause for any claims of ineffective assistance regarding that application. Therefore, I believe that at the time that applicant's second application was filed, the factual and legal bases of the claims in the instant application were unavailable. As such, applicant has met the statutory requirement of § 5(a)(1) for subsequent writ applications. Therefore, I would remand this cause to the trial court, and direct it to proceed, consistent with this opinion, under art. 11.071, § 6(b) of the Texas Code of Criminal Procedure. Because the court does not do so, I dissent.

HOLCOMB, J., delivered a dissenting opinion, in which PRICE and JOHNSON, JJ., joined.

This case is not about cognizability. Rather, it is about whether Article 11.071 of the Texas Code of Criminal Procedure should be interpreted to afford a death row inmate one full and fair opportunity to present whatever claims he may have *with the effective assistance of counsel.* I conclude that it should be so interpreted.

When we interpret statutes, we are constitutionally required to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). Where the language of a statute is unambiguous, we ordinarily give effect to that unambiguous meaning. *Ibid.* Where the language of a statute is ambiguous, we may consider extratextual factors in arriving at a reasonable interpretation. *Ibid.*

Article 11.071, by its explicit terms, limits a death row inmate to one application for a writ of habeas corpus, except in certain circumstances not relevant here. Art. 11.071, § 5(a). Article 11.071 also guarantees that a death row inmate will have "competent counsel" to assist him in the preparation and presentation of his one application. Art. 11.071, § 2(a). Does Article 11.071's ambiguous guarantee of

"competent counsel" mean counsel likely to render, and rendering, effective assistance, or does it merely mean counsel who appears qualified at the time of appointment?

The only sensible interpretation of "competent counsel" is the traditional one: counsel reasonably likely to render, and rendering, effective assistance. This is so for several reasons. First, the guarantee of the effective assistance of counsel is what makes the one-application limitation comport with traditional notions of fair play and substantial justice. Second, nothing is more firmly established in our law than that the right to counsel means the right to the effective assistance of counsel. Accord, *Evitts v. Lucey,* 469 U.S. 387, 395–397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Iovieno v. Comm'r of Correction,* 242 Conn. 689, 699 A.2d 1003, 1010 (1997); *Dunbar v. State,* 515 N.W.2d 12, 14–15 (Iowa 1994); *Com. v. Albert,* 522 Pa. 331, 561 A.2d 736, 738 (1989); *Jackson v. Weber,* 623 N.W.2d 71, 74 (S.D.2001). Article 11.071's guarantee of "competent counsel" would be a cruel joke if it did not comprehend the right to the effective assistance of counsel. The Legislature could not have intended a cruel joke.

Third, this interpretation of the "competent counsel" guarantee is consistent with what we know of the legislative history of Article 11.071. For example, Representative Gallego stated the following to the House of Representatives at the time the statute was adopted:

> [W]e tell individuals [in this statute] that everything you can possibly raise the first time, we expect you to raise it initially, one bite of the apple, one shot.... What we're attempting to do here is to say, "Raise everything at one time." You get one bite of the apple. If you have to stick the kitchen sink in there, put it all in there, and we will go through those claims one at a time and

make a decision. But none of this every-week-you-file-a-new-petition which is currently basically what happens....
The idea is this: *You're going to be able to fund counsel in these instances, and we are going to give you one very well-represented run at a habeas corpus proceeding.* And unless you meet a very fine-tuned exception, you're not going to be able to come back time after time after time.

Statement of Rep. Pete Gallego, May 18, 1995.

Finally, this interpretation of the "competent counsel" guarantee is consistent with this Court's recognition that "this entire statute [*i.e.,* Article 11.071] is built upon the premise that a death row inmate *does* have one full and fair opportunity to present his [habeas] claims." *Ex parte Kerr,* 64 S.W.3d 414, 419 (Tex.Crim.App. 2002) (emphasis in original). Certainly, a death row inmate's one opportunity to present his habeas claims is not "full and fair" if his counsel renders ineffective assistance.

The apparent intent of the Legislature in enacting Article 11.071 was to give death row inmates one full and fair opportunity, with the effective assistance of counsel, to present whatever claims they may have in an application for a writ of habeas corpus. If, because of the *in*effective assistance of counsel, a death row inmate is cheated of his one full and fair opportunity to present his claims, then the apparent intent of the Legislature is thwarted. Therefore, in order to give effect to the apparent intent of the Legislature, a death row inmate must be given one additional opportunity (but no more than one) to demonstrate that his original habeas counsel rendered ineffective assistance in failing to assert one or more claims.

In my view, Article 11.071 affords applicant an opportunity to demonstrate that his original habeas counsel rendered ineffective assistance in failing to assert the claims in question. Because the majority holds otherwise, I respectfully dissent.