NO. 07-02-0307-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 4, 2003



______________________________




ANGELO R. CARRILLO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 99-431390; HONORABLE BILLY JOHN EDWARDS, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

OPINION


 In three points of asserted error, appellant Angelo R. Carrillo challenges his
conviction, after a guilty plea, of the felony offense of possession of a controlled substance
and the plea bargained punishment of seven years penal confinement, probated, and a
$750 fine. In his points, he contends the trial court erred in denying his pretrial suppression
motion because the affidavit in support of the application for a search warrant was not
sufficient to show probable cause. Disagreeing that reversal is required, we affirm the
judgment of the trial court.

 The standard of review of a trial court's ruling on a motion to suppress is an abuse
of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In
conducting our review, we give almost total deference to the trial court's determination of
historical facts and review the court's application of search and seizure law de novo. 
Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Here, the trial court did
not make explicit findings of historical facts, so we review the evidence in a light most
favorable to the trial court's ruling and assume that it made explicit findings of fact
supported in the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App.
2000). Appellate review of an affidavit in support of a search warrant, however, is not de
novo, but rather, great deference is given to the magistrate's determination of probable
cause. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). 
Probable cause is determined from the four corners of the affidavit and the reasonable
inferences drawn therefrom. Cassias v. State, 719 S.W.2d 585, 587-88 (Tex. Crim. App.
1986). The magistrate's task in evaluating an affidavit is to make a practical common
sense decision whether, given the totality of the circumstances set forth in the affidavit, 
there is a fair probability that contraband or evidence of a crime will be found in a particular
place. Hennessy v. State, 660 S.W.2d 87, 89 (Tex. Crim. App. 1983).

 The affidavit (executed by Officer Robert Hook) submitted to obtain the search
warrant in this case contained five paragraphs beginning with a description of a residence
at 2122 Cornell Street in Lubbock. In the second paragraph of the affidavit, it was stated
that the subject of the search would be cocaine and other controlled substances. In the
third paragraph, appellant and Mary Ann Carrillo were named as being in possession of
the residence, while in the fourth paragraph it was alleged that the Carrillos possessed and
trafficked cocaine within a Drug Free Zone under the Health and Safety Code. A portion
of the fifth paragraph read:

 (B) Within the last 24 hours Affiant was able to make an undercover
purchase of a substance believed to be Cocaine from a subject. Affiant met
with this subject and paid in advance for a quantity of Cocaine. The subject
advised Affiant he/she had to travel to another location to receive the
cocaine. This subject left Affiant and drove directly to this residence. Upon
arriving, this subject went inside the residence, and exited a short time later. 
The amount of time the subject spent inside the residence was consistent
with a narcotics transaction. The subject then left and drove a short distance
to a pay phone, where a call was placed. After the call, this subject drove
directly back to this residence and went inside again. When he/she arrived
the second time, a 1991 Plymouth Van had arrived bearing Texas
Registration DB28CX. After a short time, this subject left this residence and
drove directly back to Affiant, where a quantity of cocaine was delivered to
Affiant. This subject was kept under surveillance during this entire time and
met with no other subjects. The substance purchased tested positive for
cocaine using a Scott Reagent Field Test kit. Affiant is able to recognize
Cocaine and other controlled substances.


 (C) Lubbock Power and Light records indicate a Virginia Carrillo as the
resident of this address. Lubbock Police Department records indicate an
Angelo Rufus Carrillo and Mary Ann Carrillo as the residents of this address. 
The listed vehicle returns to Angel Rufus Carrillo at this resident [sic].

 

 Even though the "subject" listed in the affidavit was later identified by name, our
review is limited to the four corners of the affidavit. Robuck v. State, 40 S.W.3d 650, 653
(Tex. App.--San Antonio 2001, pet. ref'd). Our initial decision must be whether the affidavit
should be treated as one based on information from a confidential informant or the officer's
personal observation. In cases in which probable cause is based on information provided
by anonymous informants and in "controlled buys" where police use a citizen as an active
participant in a criminal investigation, courts necessarily treat the informant's information
with a degree of suspicion.

 Appellant argues that the "subject" (2) in this case was a confidential informant
because she was not named and she provided information to the police used to support
the affidavit for a search warrant. He contends the failure to establish the subject's
credibility precludes reliance on her to establish probable cause. However, the two-prong
test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964),
which required the police to establish the credibility of confidential informants, was
abandoned in favor of a totality of the circumstances test in Illinois v. Gates, 462 U.S. 213,
232-33, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Gates Court instructed that the
informant's credibility is only one of the factors to be considered. Id.

 The State argues the legal requirements imposed upon police use of confidential
informants are not applicable here because the subject was not working with the police
during the events described in the affidavit. From a cursory reading of the affidavit, that
fact is not apparent. However, it is the only conclusion that can be drawn from the
statement that Hook made an "undercover purchase [of cocaine] from a subject." Indeed,
appellant conceded as much at the hearing on his motion to suppress, in his brief, and in
a motion to reconsider the suppression motion when he stated the subject "was not
working as a police informant [,] [t]hus she was not searched at any time during the
transaction." That being true, cases involving controlled buys are not applicable here.

 Appellant also challenges the basis for the affidavit statement that the subject was
watched moving between the locations as being necessarily based on hearsay inasmuch
as Officer Hook stayed at the original location. There is nothing in the record, either in the
affidavit or elsewhere, that established the distance from the location of the sale to the
house, or that Hook could not have personally observed the subject's movements. Even
ignoring the subject's hearsay statement, there are only two rational inferences that can
be drawn from the subject's actions, namely 1) she went to the house to pick up the
cocaine, or 2) she went to the house to make Hook believe that was where she obtained
the cocaine.

 If the subject was a confidential informer and knew Hook was a police officer, she
might have been motivated to mislead Hook as to the source of the cocaine to absolve
herself of liability or to get appellant in trouble for some unknown reason. This potential
to mislead police is the basis for the prophylactic measures taken in "controlled buy"
situations. Although appellant argues the subject may have gone to the house to mislead
Hook even without knowing he was a police officer, he does not suggest any plausible
motive for doing so. Absent any indication that the subject knew Hook was a police officer,
the magistrate could have reasonably concluded the likelihood that the subject's actions
were the result of subterfuge were sufficiently low to support the conclusion that there was
a "fair probability" cocaine was located in the house.

 Appellant also contends that the absence of any showing that an occupant of the
residence gave the subject the cocaine weighs against a finding of probable cause. We
disagree. The question for the magistrate's decision was if there was a fair probability that
cocaine could be found in the house rather than whether someone in the house gave it to
the subject. His reliance on Haas v. State, 790 S.W.2d 609 (Tex. Crim. App. 1990), is
misplaced. In Haas, the court held a showing that police found contraband on passengers
of a car departing a storage facility did not justify a search of the facility. Id. at 612. 
However, in this case, the subject went to the house after offering to sell cocaine and
delivered the substance after returning from the house. Thus, the facts before us are
distinguishable from those before the Haas court.

 Appellant identifies this court's unpublished opinion in State v. DeLeon, No. 07-95-0339-CR (Tex. App.--Amarillo Feb. 9, 1996, no pet.) (not designated for publication) as
factually indistinguishable. Rule of Appellate Procedure 47 concerning publication and
citation of opinions was revised effective January 1, 2003. Present Rule 47.7 now provides
opinions not designated for publication under the former rule "have no precedential value
but may be cited with the notation, '(not designated for publication).'" (3) Relying on the
former rule which was in effect at the time its brief was filed, the State does not discuss
DeLeon.

 We have not yet addressed the effect of the change in Rule 47 and are not aware
of opinions from other courts directly addressing that issue. Initially, we note that the
former rule not only provided that unpublished opinions have no precedential value, but it
also forbade the citation of such opinions as authority by either counsel or by a court. The
difference then is the citation of unpublished opinions is no longer forbidden. With regard
to the provision as to precedential value, the Seventh Edition of Black's Law Dictionary
contains a definition of precedent as "[a] decided case that furnishes a basis for
determining later cases involving similar facts or issues." Black's Law Dictionary 1195
(7th ed. 1999). It goes on to define the terms "binding precedent" as precedent that a court
must follow, and "persuasive precedent" as that which a court "may either follow or reject
but that is entitled to respect and careful consideration." Id. It also explicates that
precedent forms the core of the doctrine of stare decisis "under which it is necessary for
a court to follow earlier judicial decisions when the same points arise again in litigation." 
Id. at 1414.

 By stating that unpublished opinions may be cited but have no precedential value,
we perceive the intent of the rule to be that a court has no obligation to follow such
opinions. The effect of the rule is to afford parties more flexibility in pointing out such
opinions and the reasoning employed in them rather then simply arguing, without
reference, that same reasoning. However, the court to whom an unpublished opinion is
cited has no obligation to follow the opinion or to specifically distinguish such opinion. 
They may be cited merely as an aid in developing reasoning that may be employed by the
reviewing court be it similar or different. Even so, we do not view Rule 47.7, or the former
rule, as justifying unreasoned inconsistency on the part of an appellate court.

 Here, appellant presented the DeLeon opinion to the trial court and argued that it
was dispositive of the motion to suppress. The trial court reviewed the opinion and
commented:

 . . . [A]lthough it's an unpublished opinion, it is interesting to see what the
appellate court for this area would do. I do find that there are sufficient
differences in that case than this case so that I'm not overly concerned
[about] how they ruled in that particular case. . . . I think that . . . if they apply
that same reasoning . . . to this case that this search will stand up.


 The trial court correctly considered our opinion in DeLeon in the light by which such
an opinion should be considered, namely, as a guide to the application of legal principles
to the facts then before it. The trial court determined that the facts before it were factually
distinguishable from the facts before the DeLeon court. We agree with that decision. To
explicate why we agree, we must refer to those facts. In DeLeon, the affidavit used in
obtaining a search warrant showed that the person who offered cocaine to the officer there
drove to a house on 21st Street in Lubbock, picked up a second person, drove to a
convenience store where one of the people entered the store while the other drove to the
defendant's house on 38th Street, also in Lubbock, and went into the house. After leaving
the house, the driver picked up the second person at the convenience store and then
returned to the officer to complete the sale. We held the trial court did not abuse its
discretion in finding the affidavit did not establish probable cause to believe cocaine could
be found at the defendant's house. State v. DeLeon, No. 07-95-0339-CR, slip op. at 4. 
There, the trial court was justified in believing that the fact that two suspects went to two
different locations between the offer to sell and the delivery was too attenuated to show
probable cause. That is not the case here, and the trial court acted within its discretion in
overruling the motion to suppress.

 Appellant's points of error are overruled, and the judgment of the trial court is
affirmed.


 John T. Boyd

 Senior Justice


Publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Although referring to the person who dealt with Officer Hook and went to the house
as the "subject" is somewhat awkward, we will use that reference in this opinion to be
consistent with the references in the affidavit. 
3. Former Rule 47.7 provided: "Opinions not designated for publication by the court
of appeals have no precedential value and must not be cited as authority by counsel or by
a court."



deWhenUsed="false" Name="Light Grid Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









                                                NO.
07-09-0351-CR

 

                                       IN THE COURT OF APPEALS

 

                           FOR THE SEVENTH DISTRICT OF TEXAS

 

                                                     AT AMARILLO

 

                                                          PANEL B

 

                                                FEBRUARY
4, 2010

                                ______________________________

 

 

                                 EX PARTE MIKEL PETER
EGGERT, 

 

Relator

                                ______________________________

 

             FROM THE 266TH DISTRICT COURT OF ERATH
COUNTY;

 

               NO. CR12110A; HON. DAVID CLEVELAND, PRESIDING

                                ______________________________

                                                                  

Memorandum
Opinion

                                ______________________________

 

Before QUINN, C.J., and CAMPBELL
and HANCOCK, JJ.

Relator Mikel Peter Eggert appeals pro
se from the denial of his application for writ of habeas corpus by
contending the trial court erred in failing to find that his appointed counsel
was ineffective during his trial for criminal conspiracy in fabricating
physical evidence and that his retained counsel was ineffective in prosecuting
his petition for discretionary review of that conviction.  We affirm the trial court=s
order.

Background








Relator
and his father Peter Helmuth Eggert,
neither of whom was licensed to practice law in Texas at the time, attempted to
assist Marcos Gallardo, who had previously pled guilty in a criminal case, from
being deported.  In doing so, they
contacted Jason Cashon, an assistant district
attorney in Erath County, for assistance and later contacted Leroy Gaitan, the former chief of police who had investigated
Gallardo=s crime.  They sought to have Gaitan
contact the mother of the complaining witness and obtain her and her daughter=s
signatures on affidavits which stated that Gallardo had not committed any offense.  During this time, an appeal of Gallardo=s
application for writ of habeas corpus was pending in the Eleventh Court of
Appeals. 

After an offer of assistance for a
fund raiser for Gaitan=s
campaign for constable and after receiving a check for $100 from Peter Eggert as well as the affidavits Eggert
sought to have executed, Gaitan contacted the
complainant=s mother.  Gaitan did not cash
the check and did not present the affidavits to the victim=s
mother but did tell her that Peter Eggert wanted to
speak to her and that there might be money available to her if she and her
daughter were to sign the affidavits. 
The mother met with Peter Eggert and relator and eventually contacted the Texas Rangers through
her attorney and turned the affidavits over to them.  Relator was
convicted of the charge of criminal conspiracy to fabricate physical
evidence.  

 Habeas Corpus Standard of Review

The
decision to deny an application for writ of habeas corpus lies within the trial
court=s discretion.  Kniatt v. State, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  In reviewing that decision, we examine the
record in the light most favorable to the trial court=s
ruling, id., and defer to findings of the trial court supported by the
record.  Ex parte
Wheeler, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006).   Moreover, the applicant has the burden to prove
his allegations by a preponderance of the evidence. Kniatt
v. State, 206 S.W.3d at 664.   








Ineffective Assistance of
Counsel -Trial

In his first six issues, relator asserts that his trial counsel was ineffective in
failing to 1) object to opinion testimony of the prosecutor/witness Jason Cashon about the ultimate issue of the case, 2) request an
instruction that Gaitan was an accomplice witness, 3)
interview witnesses, 4) investigate and adequately prepare for trial, and 5)
understand applicable criminal law.  Moreover,
he contends the totality of counsel=s
representation was ineffective.  

In making these claims, it was relator=s
obligation to prove that counsel was deficient and that the deficiency caused
prejudice.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984); Smith v. State, 286 S.W.3d 333, 340 (Tex. Crim.
App. 2009).  Moreover, claims of
ineffective assistance must be firmly founded in the record.  Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). 
That record must be sufficient to illustrate that the alleged deficiency
was something other than reasonable trial strategy.  Garza v. State, 213
S.W.3d 338, 348 (Tex. Crim. App. 2007).

Prejudice








We address the last prong of the Strickland
test first.  Though relator
acknowledges in his brief that analyzing prejudice requires the examination of
counsel=s Aerrors
not as isolated incidents, but in the context of the overall record,@
he undertakes no such examination.  Instead,
his analysis consists of proffering such generalities as Athe
record before us undisputedly establishes >the
benchmark for judging any claim of ineffectiveness,=@
A>counsel=s
conduct so undermined the proper functioning of the adversarial process that
the trial cannot be relied on as having produced a just result,=@
Athe
totality of counsel=s constitutionally deficient
performance prejudiced his defense,@ and the
like.  Though such generalities may have
their place in argument they are neither evidence of
prejudice nor explanation developing prejudice. 
Nor is it our responsibility to fulfill the burden of showing prejudice
which authority clearly placed on him.   


Indeed, the phrase ipse dixit
best sums up what we have before us; we are to conclude that the supposed
errors are prejudicial merely because relator says
they are.  That, however, is not enough
to satisfy the second prong of Strickland.  We must follow the law and avoid concluding
that we are always right simply because we say we are.  That same obligation lies with relator.  He must
follow the law espoused in Strickland and prove prejudice.  Having not done so, each of his contentions
is overruled for that reason alone. 
Nonetheless, we will also address the substance of his claims.   

 Failure to
Object to Opinion Testimony 

First, relator
argues that his counsel permitted Jason Cashon to
testify as to his guilt on three separate occasions without objection.  However, in the first cited instance,
objection was made by counsel for relator=s
father[1]
and that objection was overruled.  In the
second cited instance, the witness was asked whether another attorney was
involved in procuring phony affidavits to which he replied that, in his
opinion, it was relator and his father who had done
that.  In the third cited instance, Cashon testified that either relator
or his father or both Atyped out
those affidavits ahead of time, knowing the falsity thereof, and asking [the
victim=s mother] to sign them, in order for -
- to make an actual innocence claim.@  No objection was made to either of the last two
statements.  








 A witness may give a lay opinion if it is
rationally based on the perception of the witness and helpful to a clear
understanding of the testimony or a determination of a fact in issue.  Tex.
R. Evid. 701. 
Such testimony is not objectionable because it includes an ultimate
issue to be decided by the trier of fact.  Tex.
R. Evid. 704; Ex parte Nailor, 149 S.W.3d 125, 135 (Tex. Crim. App. 2004); Davis
v. State, 223 S.W.3d 466, 476 (Tex. App.Amarillo 2006, pet. ref=d,
untimely filed).  Furthermore,
counsel is not incompetent for failing to object to opinion evidence on the
ground it goes to an ultimate issue.  Ex
parte Nailor, 149 S.W.3d at 135.  

Relator
does not argue that this testimony was not based on the perception of the
witness and/or was not helpful to an understanding of a fact in issue.  Rather, he complains about Cashon being an officer of the court; yet, that was not the
capacity in which Cashon was called as a witness.  Cashon was a fact
witness because he had indeed met with relator and
his father with respect to their desire to prevent the deportation of Gallardo
and had suggested a means to them as to how to prevent that deportation.  He was also involved in the appeal of
Gallardo=s application for writ of habeas corpus
and to some extent was an expert witness as well.           

Relator
also concludes that there could have been no reasonable trial strategy in
failing to object. However, given the fact that one such objection was
overruled by the court, counsel could have chosen not to emphasize the matter
further to the jury by additional objections. 
As previously stated, we may not speculate as to counsel=s
reasons for failing to object when the record fails to reveal them.  Rodriguez v. State, 292
S.W.3d 187, 190 (Tex. App.Amarillo 2009, no pet.).  Accordingly, we cannot say the trial court
abused its discretion in finding that relator failed
to prove by credible evidence that counsel=s
performance was deficient.  








Jury Instruction

Next, relator
argues that his counsel was deficient in not requesting an accomplice witness jury
instruction with respect to Gaitan.  It is relator=s
contention that Gaitan was an accomplice and that relator was entitled to an instruction that the jury could
not consider Gaitan=s
testimony unless it was corroborated by other evidence tending to connect relator to the offense. 
See Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2005).  


Fabricating physical evidence
occurs when a person, knowing that an investigation or official proceeding is
pending or in progress makes, presents, or uses any record, document, or thing
with knowledge of its falsity and with intent to affect the course or outcome
of the investigation or official proceeding. 
Tex. Penal Code Ann. '37.09(a)(2) (Vernon Supp. 2009). 
A criminal conspiracy occurs when a person agrees with one or more
persons that they or one of them engage in conduct that constitutes the offense
and he or one or more of them performs an overt act in pursuance of the agreement.  Id. '15.02(a)
(Vernon 2003).  An accomplice
participates with a defendant before, during or after the commission of the
crime and acts with the culpable mental state. 
Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  If the parties present conflicting or unclear
evidence as to whether a witness is an accomplice, the jury must initially
determine whether the witness is an accomplice as a matter of fact.  Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).  A court=s failure
to submit an accomplice as a matter of fact instruction may be harmless error
if some non-accomplice evidence exists tending to connect the accused to the
offense and there is no rational basis upon which to disregard it.  Herron v. State, 86
S.W.3d 621, 632-33 (Tex. Crim. App. 2002).  








Even assuming arguendo
that Gaitan was an accomplice, there was other
evidence tending to connect relator to the
offense.  The victim=s
mother testified that she met with Peter Eggert at a
time when relator was present and that they told her
they would give her money if she would sign the affidavits and have them
notarized.  She further testified that
Peter Eggert asked relator
to type up the affidavits.  She also told
Peter Eggert the next day that the affidavits were
not true.  This is some evidence tending
to connect relator to the offense.  Therefore, we cannot find error in the trial
court=s conclusion that relator
failed to prove that the result of the proceeding would have been
different.   

Failure to Investigate

Relator
then contends that his trial counsel did not adequately investigate his case
and prepare for trial.  Yet, he fails to
provide information as to what evidence might have been uncovered if counsel
had conducted an Aadequate@
investigation or of what that adequate investigation should have
constituted.  Without the same, he has
failed to meet his burden to show that counsel=s
performance was deficient.  Flowers v. State, 133 S.W.3d 853, 858-59 (Tex. App.Beaumont
2004, no pet.).  

Failure to Interview Witnesses








Relator
also alleges that his counsel did not interview potential witnesses.  In particular, he mentions Jose Lopez, a
licensed attorney who signed Gallardo=s
pleadings with respect to his application for writ of habeas corpus since relator and his father were not licensed in Texas.  Relator contends
that his counsel would have discovered that Lopez was not just a figurehead on
pleadings if he had interviewed Lopez.  However,
he fails to explain how this evidence would have affected the outcome of the
case.  See In re A.D., 287 S.W.3d
356, 363 (Tex. App.Texarkana 2009, pet. denied) (stating that the applicant
must show that the evidence would have been of some benefit to him).  It was relator=s
burden to establish that he was prejudiced by counsel=s
actions and he has not. 

Failure to Understand Criminal
Law 

Finally,
relator argues that counsel did not understand how to
make an offer of proof and failed to object to Cashon=s
opinion testimony as to his guilt.  We
have already addressed the latter complaint. 
As to the former, counsel attempted to inquire of the victim=s
mother as to the facts of the underlying offense committed by Gallardo.  The State objected and the objection was
sustained.  Counsel then remarked, A[w]e may
want to present an offer of proof on that too, your honor.@  Nevertheless, an offer of proof was not
made.  

Relator
contends that whether the affidavits were true or false Astrikes
at the very heart of the case.@  Yet, he offers no authority to show that the
evidence was admissible.  Moreover,
counsel may have changed his mind about wanting to make an offer of proof based
on his trial strategy.  Without more in
the record to show the reason for counsel=s
actions, we may not find that his failure to make that offer of proof was
deficient. Furthermore, to the extent that relator
complains that the totality of his trial counsel=s
performance was deficient, we find that he has failed to meet his burden to
prove that each individual complaint has merit and thus the totality of that
representation is likewise not deficient. 


Ineffective Assistance of
Counsel - Petition for Discretionary Review








Relator
further contends that the trial court erred in rejecting his contention that
his retained counsel was ineffective in petitioning for discretionary review
because he omitted various issues (e.g. legal impossibility, abuse of
discretion in denying a motion for new trial, and legal and factual sufficiency
challenges) from the petition.  We
overrule the contention for the following reason.  There is no right to counsel for purposes of
seeking a petition for discretionary review. 
Ex parte Lozada-Mendoza, 45
S.W.3d 107, 109 (Tex. Crim. App. 2001); Ex parte Wilson, 956 S.W.2d 25,
27 (Tex. Crim. App. 1997).  Because
no such right exists at that stage of the proceeding, he cannot claim that his
purported right to effective assistance of counsel was denied him.  Ex parte Graves, 70 S.W.3d 103, 111
(Tex. Crim. App. 2002) (holding that because he had no right to counsel during
the habeas proceeding, he cannot claim that his right to effective assistance
of counsel was denied him). 

Accordingly, we overrule all of relator=s issues
and affirm the order of the trial court. 

 

Per Curiam 

 

Do not publish.                                           











[1]Relator and Peter Hellmuth Eggert were tried together.