IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. WR-62,552-04




EX PARTE TOMMY LYNN SELLS




ON APPLICATION FOR A WRIT OF HABEAS CORPUS
AND MOTION TO STAY THE EXECUTION
CAUSE NO. 8759-D IN THE 63RD JUDICIAL DISTRICT COURT
FROM VAL VERDE COUNTY



           Alcala, J., filed a concurring statement in which Johnson, J., joined.

CONCURRING STATEMENT

           I concur in this Court’s per curiam order dismissing this, the third subsequent
application for a writ of habeas corpus, filed by Tommy Lynn Sells, applicant, because it fails
to demonstrate that it falls within any exception to the statutory bar on subsequent writs. See
Tex. Code Crim. Proc. art. 11.071, § 5. Applicant was sentenced to death for the capital
murder of a thirteen-year-old girl whom he killed in her own bedroom by slashing her throat
after sexually assaulting her. Applicant also attempted to kill her eleven-year-old friend by
slashing her throat when she was on the top bunk bed in the same room. Applicant does not
dispute that he is guilty of this offense.
           Applicant raises three claims in this application, all of which were previously
available and could have been raised in a prior application. Applicant’s first claim asserts
that “trial counsel failed to provide effective assistance at the sentencing phase of trial
because he failed adequately to contest the introduction of the inflammatory testimony of a
state psychiatrist which had no basis in established science, thereby violating Applicant’s
rights under the Sixth, Eighth[,] and Fourteenth Amendments.” Applicant more specifically
complains that trial counsel did not object to portions of the testimony by the State’s expert
witness on future dangerousness and did not have his own expert, Dr. Dickerson, present to
assist him in challenging that testimony. Applicant acknowledges that this claim could have
been raised in a previous application but argues that this Court should nevertheless overrule
its precedents and adjudicate his claim on the merits. Applicant, however, does not
adequately explain why this claim would constitute a reason for this Court to revisit Ex parte
Graves, 70 S.W.3d 103 (Tex. Crim. App. 2002), in which this Court held that an assertion
of ineffective assistance of habeas counsel is not cognizable on habeas corpus. Applicant’s
rationale for asking this Court to revisit Graves is premised on the assertion that “state
habeas counsel was not competent and failed to ensure the statutorily mandated investigation
of applicant’s case.” Further investigation by habeas counsel, however, would not have
affected the probable success of this claim, which is based on the trial record. As for habeas
counsel’s decision not to include this claim in applicant’s initial application for a writ of
habeas corpus, applicant fails to make a prima facie case demonstrating that including this
claim would have likely resulted in his obtaining relief in his application. Even without the
State’s expert testimony, the jury would almost certainly have decided that applicant was a
future danger to society based on the gruesome and exceedingly violent crime of which he
was convicted, his threats to kill another inmate, and the testimony of his own expert,
Dickerson. Dickerson conceded that applicant could be dangerous in the free world, and the
jury was entitled to consider that testimony in answering whether applicant would be a future
danger. In short, applicant has failed to demonstrate that habeas counsel neglected to raise
a claim that would have likely been meritorious had it been raised in the initial application.
           In his second claim, applicant contends that “trial counsel failed to provide effective
assistance at the sentencing phase of trial because he failed to investigate and present
available mitigating evidence, thereby violating Applicant’s rights under the Sixth, Eighth[,]
and Fourteenth Amendments.” Assuming that this Court had jurisdiction to consider this
claim, applicant has not made out a prima facie case either that trial counsel was ineffective
for failing to conduct an adequate mitigation investigation or that habeas counsel was
ineffective for failing to present this claim in the initial application. The allegedly new
mitigation evidence now presented by applicant in this application was largely known by
applicant’s trial and habeas attorneys. Applicant has failed to make any compelling argument
as to what evidence trial counsel should have presented to the jury but did not present, and
he fails to adequately explain why this evidence would have persuaded the jury to choose a
life sentence over a death sentence.
             Applicant now presents evidence that, during his childhood, his mother, family
members, and others sexually and emotionally abused him. But that type of information was
known by habeas counsel when he filed the initial writ application. Habeas counsel asserted
in applicant’s application that applicant “had been sexually abused by a neighbor when he
was a child.” Even if further information about this type of abuse had been developed at trial
or in the initial application, applicant does not make a prima facie case to show how that
additional information would have impacted the jury’s sentencing decision.
           Applicant now points to evidence of substance abuse and mental-health problems, but
this information was also known to trial counsel and habeas counsel. Trial counsel obtained
the services of Dickerson to assist in the preparation of applicant’s mitigation defense. 
Dickerson ran multiple psychological, personality, and physical tests, including a PET exam.
Applicant suggests that he had fetal alcohol spectrum disorder, but he acknowledges that “a
conclusive diagnosis has never been arrived at.” Habeas counsel asserted in applicant’s
application that tests done by Dickerson “showed abnormalities” in applicant’s brain and that
applicant had “a very bad substance abuse problem.” The initial habeas application recites
that Dickerson diagnosed applicant as “suffering from a borderline personality disorder with
schizoid, avoidant and antisocial features and probable brain damage.” Because it was
known to trial counsel and habeas counsel and presented in the initial habeas application, this
evidence cannot be a basis for arguing that applicant’s attorneys were ineffective in failing
to investigate applicant’s case. 
           Applicant presents evidence about his family background, including evidence that, as
a child, he was rejected by family members, witnessed domestic violence in his home, and
was beaten. He also includes evidence of his intellectual deficits in that he had difficulty
learning and retaining information, as well as poor academic performance. He suggests that
trial counsel erred by failing to give his mitigation specialist, Gonzales, more time and money
to investigate and by failing to use Dickerson more effectively. 
           Trial counsel, however, has explained that the defense team, with applicant’s
understanding and consent, decided against presenting mitigating evidence in addition to
Dickerson’s testimony for fear that this would result in the State introducing evidence of
applicant’s extraneous offenses. Gonzales acknowledged that applicant “had confessed to
a huge number of murders” and that fact “did make this a most unusual case.” Apparently
the defense strategy to limit the scope of the punishment evidence did result in the State also
limiting its punishment evidence by not presenting evidence of the extraneous murders in the
sentencing phase of applicant’s trial. Applicant fails to present a rational argument that the
jury would have been disinclined to sentence him to death for this gruesome murder that
violently cut short the life of a young girl in her childhood if it had learned of his difficult
childhood. It seems highly probable to me that the jury would have found a focus on
applicant’s childhood to be hypocritical in light of the extreme violence he perpetrated
against the two children in this case. Furthermore, he fails to show that the defense strategy
in limiting their evidence so as to prevent the jury from learning of the “huge number of
murders” committed by applicant was objectively unreasonable. Because the mitigation
evidence now asserted by applicant was largely known to trial counsel and habeas counsel
and was not presented at trial as a matter of strategy for the purpose of limiting the State’s
introduction of extraneous murders committed by applicant, I cannot conclude that this case
presents facts that would warrant this Court’s reconsideration of Graves.
           In his third ground in his application, applicant contends that “Trial Counsel labored
under a conflict of interest because he facilitated media coverage of the case and permitted
a would-be ‘true crime’ author to have access to the preparation of Mr. Sell’s defense,
thereby compromising his rights under the Sixth, Eighth[,] and Fourteenth Amendments.” 
Trial counsel has denied that anyone on the defense team accepted money from any source
outside of the court. Furthermore, the substance of this ground was included as a ground in
applicant’s initial application for a writ of habeas corpus. Because this Court has had a
previous opportunity to review these allegations, this claim is procedurally barred. See Tex.
Code Crim. Proc. art. 11.071, § 5. 
           For the reasons I stated in my dissenting opinion in Ex parte Buck, 418 S.W.3d 98
(Tex. Crim. App. 2013), I continue to believe that, in an appropriate case, if a death-sentenced individual can make out a prima facie case that he has been deprived of the
opportunity to have this Court adjudicate a likely meritorious claim as a result of habeas
counsel’s failure to raise that claim at the proper time, this Court would have cause to re-visit
Ex parte Graves, 70 S.W.3d at 117-18, and modify our precedents in response to the recent
decisions of the United States Supreme Court in Martinez v. Ryan, 132 S. Ct. 1309 (2012),
and Trevino v. Thaler, 133 S. Ct. 1911 (2013). Here, applicant has failed to make any such
showing. Under these circumstances, it cannot be said that this Court’s holding in Graves
has operated unfairly to deprive applicant of a full and fair opportunity to litigate his claims. 
           With these comments, I join the Court’s decision to dismiss this application.
Filed: March 31, 2014 
Do Not Publish