**EX PARTE Scott Louis PANETTI, Applicant**

**NO. WR–37,145–04**

Court of Criminal Appeals of Texas.

Filed: November 26, 2014

Gregory William Wiercioch, Kathryn M. Kase, for Applicant.

For majority opinion, see 2014 WL 6764475.

## *DISSENTING STATEMENT*

PRICE, J., filed a dissenting statement.

Having spent the last forty years as a judge for the State of Texas, of which the

---

last eighteen years have been as a judge on this Court, I have given a substantial amount of consideration to the propriety of the death penalty as a form of punishment for those who commit capital murder, and I now believe that it should be abolished. I, therefore, respectfully dissent from the Court's order denying the motion for stay of execution and dismissing the subsequent application for a writ of habeas corpus filed by Scott Louis Panetti, applicant. I would grant applicant's motion for a stay of execution and would hold that his severe mental illness renders him categorically ineligible for the death penalty under the Eighth and Fourteenth Amendments to the United States Constitution.

My conclusion is not reached hastily. Rather, it is the result of my deliberative thought process from having presided over three death-penalty trials as a trial court judge and having decided countless issues related to capital murder and the death penalty as a judge on this Court. I have many reasons for reaching this conclusion, only a few of which I will discuss at this juncture, and will begin with the problems illustrated by the instant case.

The Supreme Court has determined that the execution of a mentally retarded person or of an insane person would violate the Eighth Amendment. *See Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The Court's general rationale is that evolving standards of decency weigh against the imposition of the death penalty on these offenders because the execution of such individuals would not measurably advance the retribution and deterrence purposes served by the death penalty. *Atkins,* 536 U.S. at 306, 318–20, 122 S.Ct. 2242. It is inconceivable to me how the execution of a severely mentally ill person such as applicant would measurably advance the retribution and deterrence purposes purportedly served by the death penalty. And, yet, unless and until a federal court or the Supreme Court grants his application, applicant, who few dispute is severely mentally ill, will be executed, whereas a similarly situated mentally challenged person, such as one who is mentally retarded or one who is insane, will have his sentence commuted to life in prison. This artificial line divides life and death. I can imagine no rational reason for carving a line between the prohibition on the execution of a mentally retarded person or an insane person while permitting the execution of a severely mentally ill person. At a minimum, therefore, I would hold that the execution of a severely mentally ill person violates the Eighth Amendment of the federal Constitution.

But carving out another group that is ineligible for the death penalty is a bandaid solution for the real problem. Evolving societal values indicate that the death penalty should be abolished in its entirety. Since Texas enacted life without parole as a punishment for capital murder, Texas district attorneys have significantly decreased their requests for the death penalty, and juries today often prefer that punishment to the death penalty. When I first joined it, this Court received a great number of death penalty appeals and writs, as compared to the number of these cases that reach this Court now. I believe that this decline is because District Attorneys and juries now (1) have the life without parole option and (2) are less convinced of the absolute accuracy of the criminal justice system.

Before the life without parole option, juries had no choice but to sentence a defendant to death if they wanted to ensure that he would never re-enter society. After the enactment of the life without parole option, juries are now assured that

the public at large is forever protected from a capital murder defendant, who will never re-enter our society. Because the public at large is protected from a capital murder defendant regardless of whether he is executed or incarcerated for his lifetime, the life without parole option often satisfies societal desire for protection from a capital murderer.

Perhaps more importantly, society is now less convinced of the absolute accuracy of the criminal justice system. A 2012 study by the University of Michigan and Northwestern University law schools ranks Texas number three nationally in wrongful convictions over the last twenty-four years, behind Illinois and New York. Furthermore, according to the National Registry of Exonerations, "2013 was a record-breaking year for exonerations in the United States," and Texas had the highest number nationally. In my time on this Court, I have voted to grant numerous applications for writs of habeas corpus that have resulted in the release of dozens of people who were wrongfully convicted, and I conclude that it is wishful thinking to believe that this State will never execute an innocent person for capital murder. These individuals who were exonerated proved that their convictions were erroneous based on DNA evidence that established their innocence, on the use of false evidence, or on other errors that occurred at their trials. I am convinced that, because the criminal justice system is run by humans, it is naturally subject to human error. There is no rational basis to believe that this same type of human error will not infect capital murder trials. This is true now more than ever before in light of procedural rules that have hastened the resolution of applications for writs of habeas corpus and limited subsequent applications for habeas relief. *See* TEX.CODE CRIM. PROC. art. 11.071. This Court has seen too many initial applications for writs

of habeas corpus that were filed by ineffective attorneys, and yet applicants have not been permitted to file subsequent applications to challenge the ineffectiveness of those attorneys. *See Ex parte Graves,* 70 S.W.3d 103, 117 (Tex.Crim.App.2002). The lack of a guarantee of effective counsel in an initial application for habeas relief, combined with this Court's refusal to consider a subsequent writ that alleges the ineffectiveness of initial counsel, increases the risk that an innocent person may be executed for capital murder based on procedural default of a possibly meritorious issue. I conclude that the increased danger that a wrongfully convicted person will be executed for a capital murder that he did not commit is an irrational risk that should not be tolerated by our criminal justice system.

Some might argue that a victim's family deserves the finality that comes with the execution of an offender. This is a misguided sentiment as the instant case demonstrates. Applicant has been on death row for about twenty years. The victims' family has not gotten finality after twenty years due to the numerous appeals and writs filed by applicant in which he has contended that his mental status makes him ineligible for execution. And, perhaps, one would say that the answer is speeding up executions. But creating a more restrictive temporal limitation would only increase the risk of executing a wrongfully convicted person. In my experience, a victim's family is more likely to quickly experience finality through the criminal justice system when an offender is sentenced to life without parole than when he is sentenced to death.

I am among a very few number of people who have had a front row seat to this process for the past four decades. I now repeat what I stated originally in my dissenting opinion in *Ex parte Graves:* "We

are the guardians of the process." Based on my specialized knowledge of this process, I now conclude that the death penalty as a form of punishment should be abolished because the execution of individuals does not appear to measurably advance the retribution and deterrence purposes served by the death penalty; the life without parole option adequately protects society at large in the same way as the death penalty punishment option; and the risk of executing an innocent person for a capital murder is unreasonably high, particularly in light of procedural-default laws and the prevalence of ineffective trial and initial habeas counsel.

I would grant a stay of execution and file and set the application in order to grant applicant relief. I, therefore, respectfully dissent.